IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DISTRICT JUDGE GERALD BRUCE LEE
MAGISTRATE JUDGE JOHN F. ANDERSON

| | |
|---|---|
| **MICROSOFT CORPORATION** | : |
| *Plaintiff,* | : |
| v. | : CASE NO. 1:08cv00596-GBL-JFA |
| | : TRIAL BY JURY DEMANDED |
| **L & Y ELECTRONICS, INC.,** | : |
| **JOHN A. LINTON, and** | : |
| **SANGSOON LINTON** | : |
| *Defendants.* | : |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

COME NOW Defendants, L & Y ELECTRONICS, INC., JOHN A. LINTON and SANGSOON LINTON and hereby answer Plaintiff's Complaint and assert their affirmative defenses and counterclaims as follows (paragraph numbers 1 through 57 correspond to averments numbering in the Complaint):

1. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's asserted principal place of business. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's asserted business involvement in computer software. There are numerous claims made by persons not parties to this litigation that Plaintiff markets and distributes computer software known to infringe the intellectual property rights of others (See for example *Apple Computer, Inc. v. Microsoft Corporation, Amado v. Microsoft* and *Z4 Technologies, Inc. v. Microsoft*). Defendants specifically deny that at all times relevant hereto (*i.e.*, March 2007 to present) Plaintiff was advertising, marketing and/or distributing the product known as Microsoft Office Professional Edition 2003 ("Office

Pro 2003").

2. Defendants admit that L & Y ELECTRONICS, INC. (sometimes referred to as "L&Y") is a corporation organized under the laws of the Commonwealth of Virginia. Defendants deny that they are advertising, marketing or distributing the product known as Office Pro 2003.

3. Defendants admit that JOHN A. LINTON (sometimes referred to as "Mr. Linton") is a principal of L&Y. Defendants deny that L&Y engaged in any wrongful conduct. Defendants deny that Mr. Linton engaged in any wrongful conduct or otherwise acted in a manner beyond the scope of his duties as an elected officer and employee of L&Y. It is further denied that Mr. Linton derived financial benefit from the allegations set forth in Plaintiff's Complaint.

4. Defendants admit that SANGSOON LINTON (sometimes referred to as "Mrs. Linton") is a principal of L&Y. Defendants deny that L&Y engaged in any wrongful conduct. Defendants further deny that Mrs. Linton engaged in any wrongful conduct or otherwise acted in a manner beyond the scope of her duties as an elected officer and employee of L&Y. It is further denied that Mrs. Linton derived financial benefit from the allegations set forth in Plaintiff's Complaint.

5. This Paragraph states a legal conclusion to which no answer is required. By way of further response, Defendants deny Plaintiff's claims for infringement and related claims.

6. This Paragraph states a legal conclusion to which no answer is required. By way of further response, Defendants deny Plaintiff's claims for infringement and related claims.

7. To the extent this Paragraph states a legal conclusion, no answer is required. By way of further response, Defendants do not dispute venue but deny that Defendants have performed acts of infringement or otherwise engaged in any wrongful conduct.

8. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's asserted business practices. Defendants specifically deny that Plaintiff packages its software with user's manuals. By way of further response, Defendants specifically deny that at all times relevant hereto (*i.e.*, March 2007 to present) Plaintiff was advertising, marketing and/or distributing the product known as Office Pro 2003.

9. (Subparagraphs A through G) The referenced Exhibits, complete copies of which have not been attached to the Complaint, speak for themselves. Defendants deny the alleged legal effects of said Exhibits and object to the same for being incomplete in that they do not include the submissions to the Library of Congress and do not indicate the limitations of what each copyright registration entails. Under 17 U.S.C. 103(b), copyrights for compilations and derivative works are limited to the material contributed by the author of such work. For example, Registration TX0005837617 is limited to additions and revisions of Office 2001 because it is a registration of a compilation and/or derivative work. The other identified registrations have similar limitations. All of the attached Exhibits indicate that Plaintiff's copyrights are derivative works or compilations of previous versions and files copyrighted by third parties. There is no identification of who the third parties are and/or if any of the third parties are necessary to this litigation. Accordingly, said Exhibits fail to adequately document or identify Plaintiff's alleged copyright rights.

By way of further response, the Complaint does not allege that Defendants copied any of Plaintiff's products. Defendants sold used software licenses, subject to end-user license agreements. What was sold contained no source code, only compiled "machine readable" instructions. Defendants demand that Plaintiff identify, with specificity, any alleged infringed and copyrighted source code.

Defendants further deny and object to the averments of this Paragraph, as Plaintiff's delineation of software components is misguided and misleading. As noted above, all of

Plaintiff's copyrights refer to third party software components. Computer programs incorporate thousands of different subroutines authored by hundreds of computer programmers. Plaintiff does not identify which subroutines were allegedly infringed or who owns the copyrights to those subroutines.

In addition, Plaintiff's Complaint alleges that Defendants sold infringing software as a combined integrated software package. Plaintiff has not claimed that Defendants sold component software licenses.

Finally, due to Plaintiff's copyright misuse, Plaintiff is barred from pursuing a cause of action for copyright infringement.

10. (Subparagraphs A through H) Defendants admit that Plaintiff has registered trademarks. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's assertion that said trademarks were "duly and properly" registered. The referenced Exhibits speak for themselves. Defendants deny the alleged legal effects of said Exhibits beyond that of the registrations.

By way of further response, trademark registration number 2,999,281 (colored square) is subject to collateral attack due to fraud upon the United States Patent and Trademark Office ("PTO"). In an office action, the PTO required Plaintiff to modify the claimed trademark uses and suggested language provided that the uses were in fact correct. Plaintiff fraudulently claimed uses that it has not used without noting any intent to use these uses.

Trademark registration number 1,256,083 appears to be limited to publications and not relevant to this suit.

Trademark registration number 1,872,264 appears to be limited to computer programs sold as a unit with a manual. Further this mark has been adjudicated to be an unprotectable generic term. See the attached relevant orders of the United States District Court for the Western

District of Washington in the matter styled *Microsoft Corp. v. Lindows.com, Inc.*, Case Number 2:01-cv-02115-JCC, (W.D. Wash., 2002); 2:01-cv-02115-JCC docket items number 64 and 72.

Trademark registration number 2,744,843 (flying windows) may be subject to collateral attack for claiming uses with which Plaintiff has not used the trademark.

Trademark registration number 1,475,795 appears to be limited to computer programs prerecorded on magnetic disks. As magnetic disks have long been replaced with compact discs and other storage devices, this trademark appears to be of no effect.

Trademark registration number 1,741,086 appears to be limited to software sold as a unit with a manual. As the Complaint does not allege that Defendants sold any computer manuals, this trademark appears to lack relevance in this litigation.

Trademark 2,188,125 appears limited to computer programs with enhanced capabilities. As a result this mark may be subject to collateral attack for vagueness. Further it claims uses that Plaintiff has not associated with this mark.

11.  Defendants admit that L&Y sells personal computers and software that may include one of the Microsoft operating systems (presently Windows XP, Windows XP Professional, Windows Vista Home Edition or Windows Vista Professional Edition). By way of further response, Defendants deny that that L&Y sells infringing software or that at any time relevant hereto, Mr. Linton and/or Mrs. Linton acted outside their respective roles as officers and employees of L&Y. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's assertion that it has legally enforceable copyright and/or trademark rights in computer hardware and/or software allegedly advertised, marketed and/or distributed by L&Y.

12.  Defendants admit that L&Y sold a computer along with a software license for used software and having a reference on the invoice as "MICROSOFT OFFICE PROFESSIONAL 2003 USED" on or about March 22, 2007 to an individual claiming to be

Richard Logue. Upon information and belief, at all times relevant hereto, the individual claiming to be Mr. Logue was an employee and/or agent of the Plaintiff and was acting within the scope of said employment and/or agency. Defendants deny that L&Y provided any warranties beyond that contained in the end-user license agreement accepted by the individual claiming to be Mr. Logue. Defendants deny that the used software was infringing software and assert that based upon their testing of the used software, the software was neither counterfeit nor infringing. Prior to delivery to the individual claiming to be Richard Logue, an employee of L&Y connected the computer to Plaintiff's website, used Plaintiff's authentication tools, tested the software with Plaintiff's authentication tools and received confirmation from Plaintiff that the software was genuine and non-infringing. For further details of the transaction between the individual claiming to be Mr. Logue and Defendants see Affidavit of John A. Linton, paragraph 22-24 and its exhibit of invoice 236980.

13.     Defendants admit that Plaintiff sent form letters to L&Y. Defendants further admit that in approximately November 2007, they met with Plaintiff's representatives Mike Fuller and Jean Agnew. During said meeting, Defendants requested that Plaintiff's representatives identify what alternate and/or additional procedures or testing, if any, Defendants should implement in order to satisfy Plaintiff's requests. In response, Plaintiff's representatives stated only that (1) L&Y was to discontinue purchasing new Microsoft products from the distributor IET-PA, Inc. and that (2) software was to be distributed with the compact disc and packaging in which it was received. Defendants had already been complying with the second request and thereafter discontinued purchases from IET-PA, Inc.

Also during the meeting Mr. Fuller told Mr. Linton that Plaintiff was aware of sophisticated counterfeit versions of Office Pro 2003 that would appear genuine in all respects. Mr. Fuller further informed Mr. Linton that, other than testing the software with Plaintiff's authentication tools, there were no reasonable steps that could be taken to detect counterfeit