93. Plaintiff brings this lawsuit for the improper purpose of eliminating non-infringing sales of used software. See also paragraphs relating to estoppel below.

94. Defendants assert the equitable defense of unclean hands pursuant to 15 U.S.C. § 1115 (b) (9).

## TENTH AFFIRMATIVE DEFENSE - ESTOPPEL

95. Defendants utilized and relied upon Plaintiff's own authentication products in testing the software in question prior to offering it for resale. Defendants tested the software using Plaintiff's activation server and received confirmation from Plaintiff that the software was genuine and non-infringing.

96. It was only after obtaining such confirmation from the Plaintiff, that Defendants offered the software for resale. In the event Plaintiff's authentication products were faulty and/or its software deficient, Plaintiff should be estopped from asserting that Defendants infringed when all possible steps were taken to ensure that only genuine software was being introduced into the marketplace.

## ELEVENTH AFFIRMATIVE DEFENSE - CAVEAT EMPTOR

97. Plaintiff purchased *used* software licenses from L&Y. The software was sold As-Is without any warranty beyond that expressed in the End-User License Agreement. Plaintiff purchased and accepted the software on those conditions.

98. Plaintiff was given the opportunity to purchase new software from L&Y. Plaintiff did not do so but instead chose to purchase used software.

## TWELFTH AFFIRMATIVE DEFENSE – RESERVATION OF RIGHT TO AMEND

99.     Defendants will rely upon, and reserve the right to amend this pleading to assert any other defense which may become apparent from evidence made available during the course of discovery in this litigation or which is introduced at the time of the trial of this action.

WHEREFORE, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice and that they be awarded their costs and attorney's fees in defending this suit pursuant to 17 U.S.C. § 505, along with any such other relief the Court deems just and proper.

## DEFENDANTS' COUNTERCLAIMS

FACTS COMMON TO ALL COUNTERCLAIMS

100.    Plaintiff/Counter-Defendant, Microsoft Corporation ("Microsoft"), admits to being a Washington corporation, with a corporate address of One Microsoft Way, Redmond, Washington 98052.

101.    Microsoft admits to manufacturing, advertising, marketing and licensing computer programs. This includes the use of numerous agents. Microsoft's activities include soliciting and receiving millions of dollars in annual sales revenues from end-user citizens of the Commonwealth of Virginia.

102.    Microsoft markets its products directly to large computer manufacturers such as Dell Computers, Hewlett Packard and Gateway Computers. In addition, Microsoft markets its products through regional distributors to small computer manufacturers including "OEM System Builders." Defendants/Counter-Plaintiffs (collectively "L&Y") is an authorized OEM System Builder. L&Y is also a "Manufacturer" as defined in Microsoft's End User License Agreement.

103.    Microsoft's costs and expenses associated with its computer program products are primarily in the origination of the programs. Microsoft has very little production costs associated with manufacturing the compact discs upon which it records and distributes its computer programs.

104. Earlier versions of Microsoft's computer programs included user manuals as a component. Microsoft has discontinued the inclusion of user manuals. End-users of Microsoft's programs are now required to use the "Help" instructions of Microsoft's programs or to purchase user manuals from other sources, for example from retail book sellers such as Barnes & Noble.

105. Upon information and belief, Microsoft uses tying schemes to extend additional pricing discounts to large computer manufacturer while using similar schemes to limit OEM System Builders access to such discounts.

106. Upon information and belief, Microsoft uses tying schemes to maintain its near monopoly on personal computer operating systems and office productivity software. Microsoft also acts to protect these monopolies by extending unjustified pricing discounts to home and/or educational users.

107. Due to Microsoft's high prices in comparison to its product manufacturing costs the software marketplace has been exposed to "software piracy." Microsoft's sales of organization-wide master security keys appear to thwart much of Microsoft's efforts to eliminate piracy.

108. Due to the high sales price, but low production cost of Microsoft's products, pirates can afford to expend significant amounts of money in producing exact or near exact copies of Microsoft's products.

109. L&Y is not engaged in software piracy and has taken what reasonable steps as are available to it to avoid the marketing or distribution of pirated and counterfeit copies.

FIRST COUNTERCLAIM - BREACH OF WARRANTY

110. In response to counterfeiting, Microsoft provides a software activation product to authorized OEM System Builders such as L&Y as well as to the public for authenticating its software under the guise of software "activation". In exchange for taking the time and

expending employee labor to use these products to validate purchased software, Microsoft's End-User License Agreement warrants the activation process to be properly designed to prevent the unlicensed use of software. When unlicensed software is detected, an error message is displayed to the user of the activation process.

111. In its affirmative claims, Microsoft has alleged that L&Y infringed its intellectual property rights. See, paragraphs 12 and 14 of the Complaint. In the event Microsoft prevails in these claims, it has breached its express warranties associated with its activation software product.

112. In this case, L&Y is both an OEM System Builder and Manufacturer pursuant to Microsoft's End-User License Agreement. In such capacity and pursuant to its contractual relationship with Microsoft, L&Y, authenticated the alleged "infringing" software using Microsoft's activation product. If for some reason the alleged "infringing" software contained non-authentic elements, Microsoft's own activation product failed to detect such elements and must have therefore been defective.

113. This defect and product failure has violated Microsoft's express and implied warranties and has exposed L&Y to statutory damages and the costs of defending this lawsuit.

WHEREFORE, L&Y prays that its First Counterclaim be granted and that it be compensated for any damages, judgment, award, and/or settlement in addition to the cost of defending Counter-Defendant's suit that was proximately caused by Microsoft's defective activation product and breach of express and/or implied warranties.

SECOND COUNTERCLAIM – ANTITRUST VIOLATIONS

114. In violation of antitrust laws Microsoft has sold to L&Y's competitors its products at prices below those offered to an extent that substantially lessens competition and creates monopolies in sales of Microsoft's products. L&Y is refused pricing discounts from Microsoft

commensurate with its status as an authorized seller of Microsoft's products. Microsoft's pricing is not commensurate with differences in costs of manufacture, sale or delivery methods for quantity discounts given to competitors. As a result Microsoft is in violation of Federal and Virginia antitrust laws.

115. As a result of Microsoft's antitrust violations, L&Y is forced to purchase for resale most of Microsoft produced products from its competitors. For example, Office 2007 is purchased at a lower price from Dell Computers at retail than from D&H Distributing at wholesale.

116. These antitrust violations by Microsoft are willful and/or flagrant.

117. Microsoft has filed numerous lawsuits claiming infringement of its abandoned product lines in an attempt to stifle competition and prevent lawful resale of its products. At the same time Microsoft prevents sales and service of its products from being profitable for a single store location. Microsoft provides sales incentives and discounts to large retailers and computer manufacturers in an effort to eliminate small business competition. Upon information and belief, proportional and commensurate incentives are not made available to single store retailers and OEM System Builders. Microsoft's conduct is designed to stifle and control the marketplace and eliminate competition.

118. Due to the prevalence of Microsoft's near monopoly in the personal computer software markets, Microsoft's antitrust violations have extended across the many state borders. As such they negatively affect both interstate commerce and Virginia intrastate commerce.

119. L&Y has been damaged by Microsoft's antitrust violations by being forced to purchase Microsoft's products at a higher price and from L&Y's competitors. It is estimated that these damages exceed $50,000 (See Affidavit of John A. Linton, paragraphs 9-11).

120. L&Y has been further damaged by these antitrust violations of Microsoft by being

forced to defend this lawsuit that is based upon Microsoft's improper attempts to eliminate competition it encounters from the resale market of used software.

WHEREFORE, L&Y prays that its Second Counterclaim for antitrust violations be granted in an amount sufficient to deter future willful and flagrant anti-competitive conduct by Microsoft, such a sufficient amount believed to be 0.01% of Microsoft's annual profits or in the alternative in an amount of triple damages, estimated to be in excess of $150,000 along with the costs and legal fees associated in obtaining a favorable adjudication or settlement.

|  |  |
|---|---|
| _____/s/_____ | _____[signature]_____ |
| Jenine Elco Graves, Esq. | Timothy W. Graves, Esq. |
| Virginia State Bar No. 44877 | Virginia State Bar No. 45414 |
| Co-counsel for Defendants | Co-counsel for Defendants |
| QUINTO & WILKS, P.C. | A ATTORNEY LLC |
| 3441 Commission Court | 9300 Grant Avenue, Suite 203 |
| Lake Ridge, Virginia 22192 | Manassas, Virginia 20110 |
| Phone: 703-492-9955 | Phone: 703-365-8306 |
| Fax: 703-492-9455 | Fax: 703-365-8307 |
| jgraves@quintowilks.com | a-atty@verizon.net |

## CERTIFICATE OF SERVICE

I hereby certify that on this ___14th___ day of July, 2008, I will electronically file the forgoing Defendants' Answer, Affirmative Defenses and Counterclaims with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>John K. Roche, Esq.
>Counsel for Plaintiff
>PERKINS COIE, LLP
>607 Fourteenth Street, N.W., Suite 800
>Washington, D.C. 20005
>Phone: 202-434-1627
>Fax: 202-654-9106
>jroche@perkinscoie.com

_____/s/_____
Jenine Elco Graves, Esq.
Virginia State Bar No. 44877
Co-counsel for Defendants
QUINTO & WILKS, P.C.
3441 Commission Court
Lake Ridge, Virginia 22192
Phone: 703-492-9955
Fax: 703-492-9455
jgraves@quintowilks.com