198 F.3d at 1147 (quoting Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 10 (2d Cir. 1976) (Friendly, J.)). In contrast, a suggestive term is inherently distinctive and thus entitled to protection without proof of secondary meaning. Surgicenters, 601 F.2d at 1015. Finally, a generic term, "one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species," is not protectable even if it has acquired distinctiveness or secondary meaning. Id. at 1014.

The lines of demarcation between these four categories are not always clear, id., but in the present case, the parties have focused exclusively on whether the mark is generic or descriptive. This particular distinction has proved particularly nettlesome for courts, as "[t]he difference between a generic mark and the weakest of descriptive marks may be almost imperceptible." Filipino Yellow Pages, 198 F.3d at 1151 n.5. Because the parties have presented compelling arguments that the Windows mark is generic and that it has acquired secondary meaning, drawing the line properly in this case is far more critical than in cases involving marks that are generic and lack secondary meaning. See, e.g., id.; Surgicenters, 601 F.2d at 1017-18.

### 2. Burden of Proof

The Windows mark was initially registered in 1995 for "computer programs and manuals sold as a unit; namely, graphical operating environment programs for microcomputers," Behm Decl. Ex. A, so it triggers the Lanham Act's presumption that "[a] certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . . ." 15 U.S.C. § 1057(b). Because of the presumption of validity, Lindows.com bears the burden of proving genericness. See Filipino Yellow Pages, 198 F.3d at 1146; 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:12 (4th ed. 2001) (hereinafter McCarthy). A party challenging a registered mark must show by a preponderance of the evidence that it is invalid. See 555-1212.com, Inc. v. Comm. House Int'l, Inc., 157 F. Supp. 2d 1084, 1088 (N.D. Cal. 2001) (citing Vuitton Et Fils S.A. v. J. Young Enters., Inc., 644 F.2d 769, 776 (9th Cir. 1981)).

ORDER – 13

### 3. Legal Standard for Finding a Mark Generic

"A generic term is one that refers to the genus of which the particular product is a species." Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 821 (9th Cir.1996) (quoting Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 194 (1985)). In other words, when a trademark's primary significance is to describe the type of product rather than the producer or source, the mark is a generic term. See Filipino Yellow Pages, 198 F.3d at 1147 (quoting Anti-Monopoly, Inc. v. General Mills Fun Group, 611 F.2d 296, 304 (9th Cir. 1979)). The Lanham Act itself contains a test for genericness: "The primary significance of the . . . mark *to the relevant public* . . . shall be the test for determining whether the . . . mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. § 1064(3) (emphasis added).[3]

The Ninth Circuit has "often relied" upon the "who-are-you/what-are-you" test in determining whether a term is generic. Filipino Yellow Pages, 198 F.3d at 1147. If a mark answers the buyer's question "Who are you?" "Where do you come from?" then the mark is valid because a buyer understands it to refer only to a particular source of the goods or services. See id.; Surgicenters, 601 F.2d at 1016. On the other hand, when a mark answers the buyer's "What are you?" question, the mark is generic and invalid because it is identified with all such goods or services regardless of their producers. See id.; see also 2 McCarthy § 12:1.

The various embodiments of the test for genericness indicate that a specific subset of all possible consumers, "the relevant public," is the proper focus of the Court's inquiry. See, e.g., Yost, 92 F.3d at 821 (affirming district court's identification of the "relevant public"); Surgicenters, 601 F.2d at 1017 (identifying "consuming public"). In the present case, Microsoft's Windows trademark is used to identify "graphical operating environment" computer programs and related items such as instruction manuals. See Behm Decl. Ex. A. As noted above, Microsoft Windows is designed to run only on Intel-compatible personal computers and is the operating system installed on over 90% of these machines.

---

[3] This test is generally regarded as a codification of Judge Learned Hand's inquiry in Bayer Co. v. United Drug Co., 272 F. 505, 509 (S.D.N.Y. 1921): "What do the buyers understand by the word for whose use the parties are contending?" Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 640 (Fed. Cir. 1991).

ORDER – 14

1  Thus, the Court finds that the relevant consuming public for the goods associated with the contested
2  trademark consists of all owners and users of Intel-compatible personal computers.[4]

### 3. Lindows.com's Evidence of Genericness

Whether a trademark is generic is a question of fact. Yost, 92 F.3d at 821. A court may rely on a variety of evidence in determining the validity of a mark, including competitors' use, plaintiff's use, dictionary definitions, media usage, testimony of persons in the trade and consumer surveys. See 2 McCarthy § 12:13 - 12:14. The evidence may relate to the time period of the alleged infringement or dilution or to the time when the mark's proponent introduced its designation onto the market. Id. § 12:13. Here, Lindows.com has presented evidence in five of the six categories, omitting only consumer surveys, to support its claim that the Windows trademark is generic.

#### a. Media Usage

A term's appearance as a generic name in both the general and trade press can serve as an indication that the consuming public perceives the term to be generic. See Surgicenters, 601 F.2d at 1017 n.17; see also Murphy Door Bed Co. v. Interior Sleep Sys., 874 F.2d 95, 101 (2d Cir. 1989). Lindows.com provided press reports from the early 1980s that referred to "window wars" and described "windows" as a favorite "buzzword" of the computer industry. See Park Decl. Exs. C, D, H. Making a highly accurate forecast about the rapidly changing computer market, Business Week predicted that "windowing programs" would become a standard feature of every personal computer. See Park Decl. Ex. E. In addition, advertisements for computer programs containing overlapping windows graphical displays also referred to "windows" generically in the decade preceding Microsoft's successful registration of the trademark. See Harris Decl. Ex. A, at MS000727-794. Both the advertisements and press articles show that the consuming public associated the term "window(s)" with a graphical feature of a computer's user interface or software application rather than with Microsoft's product prior to

---

[4] The Court's selection of the relevant consuming public is broader than the sample population in the survey Microsoft submitted to the USPTO in 1993. There, the survey focused only on those individuals who had purchased computer software in the past twelve months or were likely to purchase software in the next three months. See Zandan Decl. ¶ 3 (in Ferron Decl. Ex. 2).

ORDER – 15