1  Windows' release in 1985 and still considered it to have some generic meaning at the time of the
2  trademark's registration with the USPTO.

3        Although the widespread use of Windows products in recent years has resulted in their frequent
4  mention by the media, this Court's search of the LexisNexis database revealed that the generic use of
5  the term continues to appear in the press. See, e.g., David Pogue, That P in PC Now Stands for Picture,
6  N.Y. Times, Feb. 28, 2002, at G1 ("A Windows XP desktop window offers two new views" and several
7  other generic references to "window"); Stanley Miller II, The Milwaukee Journal Sentinel, March 5,
8  2002 ("You can see through an open web browser window to an email program running underneath
   it."); David Pogue, Windows XP: Microsoft's New Look for Fall, in Size XXL, N.Y. Times September
9  6, 2001, at G1 (several generic uses of "window" in review of Microsoft's latest operating system);
10 David Pogue, A New Face (and Heart) For the Mac, N.Y. Times March 29, 2001, at G1 ("overlapping
11 windows" and "pop-up windows").

### b. Dictionary Definitions

13
14       The use of a term in dictionaries is also indicative of the public's perception of the term's
   meaning. The Ninth Circuit has placed significant weight on a term's dictionary definition but has been
15 careful to emphasize that such evidence on its own is not determinative. See Filipino Yellow Pages, 198
16 F.3d at 1148 (quoting Surgicenters, 601 F.2d at 1015 n.11) ("While not determinative, dictionary
17 definitions are relevant and often persuasive in determining how a term is understood by the consuming
18 public, the ultimate test of whether a trademark is generic."). Both computer-specific and general
19 dictionaries from the early 1980s to the present contained definitions of "window(s)" indicating it was
20 understood by the public to have the generic meaning offered by Lindows.com. See Charles J. Sippl,
21 Computer Dictionary 554 (4th ed. 1985) (Harris Decl. Ex. A, at MS000621) (defining "window" as "[a]
22 software device, used in multiprocessing environments, that allows a terminal to be used to run several
23 processes at once. The terminal screen is divided up into several windows . . . ."); Microsoft Computer
24 Dictionary 481 (4th ed. 1999) (Harris Decl. Ex. D) ("window n. In applications and graphical interfaces,
25 a portion of the screen that can contain its own document or message. In window-based programs, the

26 ORDER – 16

screen can be divided into several windows, each of which has its own boundaries and can contain a different document (or another view into the same document)");[5] The Random House Dictionary of the English Language 2177 (2d ed. 1987) ("window . . . n. . . . . 11. Computers. a section of a display screen that can be created for viewing information from another part of a file or from another file").

### c. Microsoft's Use of the Term

The way in which a party claiming trademark protection uses the term is also relevant to a determination of the mark's validity. See Surgicenters, 601 F.2d at 1017 n.19 (letters by Surgicenter founder recognizing the term was used in a generic sense). There is indirect evidence that Microsoft considered Windows to be generic at the time it began using the trademark. When Microsoft first released Windows in 1985, it referred to its new GUI not as "Windows" but as "Microsoft Windows 1.0." This suggests that in order to distinguish the product name from the generic class of GUI products in the market, Microsoft needed to add the company name trademark to the product name. See 2 McCarthy § 12:26 (discussing the importance of creating a generic name in addition to the trademarked brand name); see also Harley-Davidson, Inc. v. Grottanelli, 164 F.3d 806, 809 (2d Cir. 1999) ("Honda hog" as the combination of a tradename adjective with a generic name for motorcycles to create uniqueness). It is also telling that despite Microsoft's investment of hundreds of millions of dollars in promoting its Windows products and the widespread recognition and popularity of Windows in the world market for Intel-compatible personal computer operating systems, the company continues to market Windows using a logo containing both "Microsoft," "Windows" and a version-specific suffix. See Behm Decl. Ex. E (in seven of eight advertisements for recent versions of Windows, the company name appears next to the Windows product name). The Court recognizes that this evidence is not nearly as strong as Dr. Reed's admissions in Surgicenters, but it is nonetheless relevant to drawing an inference regarding Microsoft's own understanding that its Windows mark might be generic.

---

[5] Not surprisingly, Microsoft's dictionary contains several definitions of its Windows operating systems, see pp. 482-84.

ORDER – 17

### d. Competitor's Use of the Term

The Ninth Circuit has accepted evidence of third party competitors' use of the contested term to determine whether it is generic. See Stuhlbarg, 240 F.3d at 840 (terms at issue were "widely used by third parties in the safe industry"). In its defense of a copyright suit brought by Apple Computer, Microsoft successfully argued that several companies had introduced user interfaces featuring overlapping windows prior to Microsoft's announcement of its Windows product. See Apple, 799 F. Supp. at 1017, 1024, 1027; see also Dvorak Decl. ¶ 17 (describing both GUI and non-GUI windows systems produced by Xerox, Apple, Digital Research, Quarterdeck and VisiCorp). Microsoft Windows' dominance in the modern computing environment makes it easy to describe these graphical features as "windows" in hindsight, but Lindows.com's evidence makes clear that the same term was used by the industry and the press during the early development of this now-standard feature. See Dvorak Decl. ¶ 17; Park Decl. Exs. A-R; see also Harris Decl. Ex. A, at MS 000582-586, 1012-66 (USPTO Office Action listing numerous registered trademarks and third party applications for marks using "windows" to identify a type of computer software).

Widespread public use of a term has also been relied upon by at least one court to rebut the presumption of validity and as well as to find the term generic. See 555-1212.com., 157 F. Supp. 2d at 1088-90 (relying on declaration that 555-1212 phone number had been used for many years to denote telephone directory services). Here, Lindows.com presents literally hundreds of computer products, software companies and trademarks that incorporate the term "windows" or a variants such as "win" or "window" in their name to support its argument that the term has taken on a second generic meaning – compatibility of software applications with the Windows operating system. See Naga Decl. & Exs. B-O; Dvorak Decl. ¶¶ 19-20 (describing WinAmp, WinZip and WindowBlinds). While this use of "windows" does refer to the type of product rather than the source, the Court finds the evidence less probative than the direct competitors' use of the windows term in the early 1980s because use of the term as an indicator of compatibility may still preserve the distinctiveness of the dominant product. There is no evidence that purchasers of WinAmp and similarly named products have ceased to associate

ORDER – 18