the Windows operating system with Microsoft. Further, the "compatibility" use of a trademark could lead to a substantial weakening of trademark protection because it would effectively immunize products trading off the goodwill of a mark under the guise that they complement or are compatible with the senior mark.

Nonetheless, the sheer volume of windows-related uses in the computer industry is notable. Microsoft is correct that its decision not to prosecute all the users of its marks, see Peterson Dep. at 86-87; Ferron Decl. ¶¶ 10-14, is not an indication of abandonment of the mark. See Wallpaper Mfrs. v. Crown Wallcovering Corp., 680 F.2d 755, 766 (C.C.P.A. 1982). Rather, the ubiquity of "windows" variants in the computer market may tend to show the mark is generic, as "distinctiveness can be lost by failing to take action against infringers. If there are numerous products in the marketplace bearing the alleged mark, purchasers may learn to ignore the 'mark' as a source of identification." Id., quoted in 2 McCarthy § 17:17.

### e. Testimony of Persons in the Trade

With an admonition regarding the suspect impartiality of people associated with the trademark holder, Professor McCarthy states that the "understanding of those who are familiar with the marketplace usage of the designation in question can be helpful evidence on the genericness issue." 2 McCarthy § 12:13 (citing Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 910 (9th Cir. 1995)). Lindows.com relies heavily on the declaration of John Dvorak, a long-time professional commentator on the computer industry. See Dvorak Decl. ¶¶ 2-9. According to his declaration, the term "windows" and its variants have been used by the computer industry for two different generic meanings. First, the term "refer[s] to portions of the graphical screen dedicated to different programs running simultaneously or partitioned in window-like boxes." Id. ¶ 19. A more recently adopted meaning uses "windows" to "suggest compatibility with the dominant Microsoft operating system platform." Id.

ORDER – 19

#### 4. Conclusion for Rebuttal Evidence

The burden of proof for rebutting a registered trademark's presumption of validity is preponderance of the evidence. See 555-1212.com, 157 F. Supp. 2d at 1088 (citing Vuitton Et Fils S.A. v. J. Young Enters., Inc., 644 F.2d 769, 776 (9th Cir. 1981)); see also Door Sys., Inc. v. Pro-Line Door Sys., Inc., 83 F.3d 169, 172 (7th Cir. 1996) ("The presumption . . . evaporates as soon as evidence of invalidity is presented. . . . Its only function is to incite such evidence and when the function has been performed the presumption drops out of the case.") (citations omitted). Lindows.com has presented substantial evidence that, prior to the time that Microsoft first announced its Windows product, the consuming public understood "windows" or "window" to refer to a type of GUI or operating system feature and today understands the terms to indicate software applications that are compatible with Microsoft Windows. The Court is aware of the Ninth Circuit's emphasis on the proper placement of the burden of proof when a party is challenging the validity of a registered trademark as compared to an unregistered one. See Filipino Yellow Pages, 198 F.3d at 1148, 1151 (comparing Filipino Yellow Pages, an unregistered mark, to Surgicenters, a registered mark). In the present case, the evidence submitted by Lindows.com is comparable in volume and quality to the evidence presented by the defendant in Surgicenters and is far more substantial than the "modest evidence of genericness" in Filipino Yellow Pages, id. at 1151. As a result, the Court finds that Lindows.com has met its burden of proof in rebutting the validity of the Windows trademark and thus the "presumption drops out of the case."

#### 5. Microsoft's Arguments for Validity

Microsoft counters Lindows.com's evidence of genericness with only sparse support for its claim that Windows falls into a protectable category. See 555-1212.com, 157 F. Supp. 2d at 1089 (describing shift in burden to the trademark's proponent). Aside from disagreeing with Lindows.com's application of trademark law and attempting to distinguish the cases upon which it relies, Microsoft supplies minimal affirmative evidence to support its claim that Windows is non-generic. Rather, it repeatedly asserts that Windows is a descriptive mark that has acquired secondary meaning and is thus

ORDER – 20

1 protectable under the Lanham Act.

### a. Microsoft's Evidence

The Court first turns to the evidence submitted by Microsoft consisting primarily of several consumer surveys that show a high degree of recognition of the Windows brand among the consuming public. Consumer surveys are a common means of supporting or challenging the validity of a trademark. See 2 McCarthy § 12:14. To be effective, "the survey must be directed at the issue of consumer perception as to the significance and meaning of the designation in issue. A survey that merely tests for consumer awareness of the designation is irrelevant." Id. (quoting Stuhlbarg, 240 F.3d at 840). The Ninth Circuit has emphasized that a trial court may consider factors such as "survey design, nature of the questions asked, and the experience and reputation of the surveyor" in determining the weight to accord a survey. Stuhlbarg, 240 F.3d at 840 (citing E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1292-93 (9th Cir. 1992)). The Stuhlbarg court affirmed the district court's decision to ascribe minimal weight to a consumer survey that purported to show a certain percentage of consumer awareness of the contested term without providing any information about the survey design, questions or methodology. Id. ("Simply asserting consumer awareness of the term begs the question.")

In support of its Motion for Preliminary Injunction, Microsoft submitted the Declaration of Bobbie Oglesby, the current Director of Branding for Microsoft and the former Brand Manager for Windows. See Oglesby Decl. ¶ 1. The first survey mentioned was conducted for Microsoft in 1999 and shows that 93% of personal computer users recognized the Windows brand. See id. ¶ 3. No exhibits are attached to demonstrate the methodology or explain the survey design, and without such a foundation, the Court has no alternative but to ascribe a bare minimum of weight to the result. The next survey described by the Oglesby Declaration was conducted by Landor Associates. Landor surveyed "on-line" consumers in early 2001 and concluded that Windows was the No. 1 brand overall and No. 3 in distinctiveness. Id. ¶ 4. The Declaration attaches a copy of the ImagePower brand survey results which displays the top twenty "Marks of Distinction" in ten countries as published in the July 2001 issue of Wired Magazine. See id. Ex. 1. Based on the one page exhibit, it is impossible for the Court to analyze

ORDER -- 21