the Declaration's assertion that "Windows ranked No. 1 overall" because the submitted evidence lacks meaningful information about survey methodology. Accordingly, the Court finds it to be of little probative value in showing that Windows is a protectable trademark. The final survey mentioned in the Oglesby Declaration was also conducted by Landor Associates in 2001 and showed that "in the United States, almost 80% of the general public is aware of the Window (sic) brand." Id. ¶ 5. As discussed in Stuhlbarg, such "consumer awareness" surveys merely "beg[] the question." 240 F.3d at 840. The Court therefore declines to give any substantial weight to this survey, or the others described in the Oglesby Declaration.

Finally, Microsoft's Reply Memorandum includes a copy of the survey conducted for it by IntelliQuest in 1993. See Ferron Decl. Ex. 2. This survey is completely substantiated and explained by Peter Zandan, who supervised and designed the questionnaire. The purpose of the survey was to determine if consumers who had purchased computer software in the past 12 months or were likely to purchase software in the next three months recognized "Windows" primarily as the product of a single company rather than the name of a type of product put out by more than one company. The result of this survey indicated that 100% of respondents were familiar with "windows" in the computer context and that approximately 67% of the relevant consumer population identified "Windows" as the "brand name of a product put out by one company." See Ferron Decl. Ex. 2 (attaching Zandan Decl. and Exs.). The IntelliQuest survey is due far more weight by the Court than the three surveys discussed above because it is supported by exhibits demonstrating the survey's methodology, questions and design.

Nonetheless, the 1993 survey's probative value is limited by the fact that it was taken approximately fourteen years after the introduction of Xerox's Smalltalk software which pioneered the overlapping windows feature of user interfaces and ten years after Microsoft first announced its Windows product. Lindows.com has submitted a substantial volume of evidence in support of the generic use of "windows" by the computer industry and the press in the early 1980s. This evidence predates the IntelliQuest survey by at least ten years and raises significant questions about the genericness of the term even before Microsoft announced Windows in 1983. A particularly high burden

ORDER – 22

rests on the holder of the trademark who is advancing an argument that the mark has been "reclaimed from the public domain by a change in consumer usage over a long period of time." 2 McCarthy § 12:30-12:32 (discussing the Singer and Goodyear cases). Although both Singer and Goodyear differ from the present case in that they involved a mark that was once valid, later became generic, and then finally returned to protectable status, the Court does not find this distinction to alter the requisite level of rigor needed to reclaim a mark from the public domain. Another distinction between Goodyear and Singer that points in favor of Lindows.com is the fact that both of the marks involved there were personal names rather than marks with low inherent distinctiveness, as "windows" is. See id. § 12:30 (citing Harley-Davidson, 164 F.3d at 811 (agreeing with Treatise and stating " if a generic word could ever be infused with trademark significance, the word must have ceased to have current generic meaning.")). As Lindows.com's evidence shows, the term "windows" retains at least some generic meaning today, suggesting that Microsoft has not completely reclaimed the term from the public domain.

### b. Microsoft's Other Arguments

In addition to the four surveys, Microsoft's Reply Memorandum attempts to rebut several of the legal arguments and distinguish the case law upon which Lindows.com relied to advance its claim that Windows is generic. Microsoft first points out that the burden of proof in rebutting the presumption of validity of a registered trademark lies on the party challenging the mark, see Reply Mem. at 5, and distinguishes cases such as Filipino Yellow Pages and Intel Corp. v. Advanced Micro Devices, Inc., 756 F. Supp. 1292 (N.D. Cal. 1991), both of which involved unregistered marks. The Court has applied the case law properly by placing the burden of proof on Lindows.com and concludes that Lindows.com satisfied the burden of rebutting the presumption of validity by a preponderance of the evidence.

Microsoft also disagrees with Lindows.com's application of the "who-are-you/what-are-you" test for genericness. See Reply Mem. at 5. Arguing that "windows" does not represent the genus of operating system software because no consumer would go to a store and ask for "a windows" when she

ORDER – 23

wants an operating system, Microsoft contends that Windows is properly characterized as descriptive and that it has acquired substantial secondary meaning. While the Court agrees that the Windows mark has acquired secondary meaning,[6] no degree of secondary meaning will save a generic mark. See Surgicenters, 601 F.2d at 1016 (even if a product acquires "secondary meaning as indicating the origin of the goods, such circumstance could not 'take the Common descriptive name of an article out of the public domain . . . no matter how much money or effort it pours into promoting the sale of the merchandise.'") (quoting the "Matchbox Case," 280 F.2d 437, 440 (C.C.P.A. 1960)). Although "windows" does not answer the "what are you" question persuasively, this is not dispositive, as the Ninth Circuit has not held that it is the exclusive test for genericness. See Filipino Yellow Pages, 198 F.3d at 1147 ( "what-are-you" test is "often relied upon").

The difficulty in applying the "what-are-you" test is that it favors an affirmative response for nouns rather than adjectives. As noted by Professor McCarthy, the "part of speech" test does not accurately describe the case law results. See 2 McCarthy § 12:10. Thus, a generic adjective can exist if it names the most important feature or purpose of a product. Id. (citing the Matchbox toy vehicles example). Another well-known example of a generic term that similarly does not provide a sensible answer to the "what are you" test is "Light Beer" or "Lite Beer." In that case, the Seventh Circuit found that the terms "lite" and "light" indicated a type of low calorie or low alcohol beer rather than a specific source of the beer. See Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75, 81 (7th Cir. 1977) ("Otherwise a manufacturer could remove a common descriptive word from the public domain by investing his goods with an additional quality . . . ."). In short, the "what are you" test does not provide a conclusive answer to the Court's inquiry into whether Windows is generic or descriptive.

---

[6] The following factors are relevant to a court's determination of whether secondary meaning has been acquired: "(1) whether actual purchase[r]s of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." Yost, 92 F.3d at 822.

ORDER – 24