IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION, | ) |
| Plaintiff, | ) ) ) Case No. 1:08cv00596-GBL-JFA |
| v. | ) ) |
| L&Y ELECTRONICS, INC., *et al.*, | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMS**

Plaintiff and counter-defendant Microsoft Corporation ("Microsoft") submits this Memorandum in support of its Motion to Dismiss, or alternatively, for a More Definite Statement, regarding the counterclaims brought by defendants and counterclaimants L&Y Electronics, Inc., a Virginia corporation, John A. Linton, an individual, and Sangsoon Linton, an individual, (collectively, "Defendants").

**INTRODUCTION**

Defendants distributed counterfeit Microsoft software on two separate occasions despite receiving notice of their wrongdoing. In an attempt to deflect the Court's attention from their own illegal conduct, Defendants responded by filing convoluted and baseless counterclaims sounding in antitrust and breach of warranty. Defendants are barred from pursuing their antitrust claim because it is premised on Microsoft's initiation of this lawsuit, which cannot give rise to relief. Defendants' antitrust claim is also improper because they do not possess the requisite antitrust standing and have not suffered a cognizable antitrust injury. Microsoft's enforcement of its trademarks and copyrights is clearly legal, and Defendants – distributors of counterfeit Microsoft software – simply have no basis for challenging Microsoft's legitimate business

dealings.  Similarly, Defendants' proffered breach of warranty claim fails because there is simply no warranty associated with the counterfeit software in which Defendants trafficked.

In addition, Defendants have failed to allege their supposed antitrust and breach of warranty counterclaims with the degree of specificity required.  In fact, Defendants do not identify the legal or statutory bases for their claims.  Microsoft must guess at the nature of the claims asserted against it and cannot evaluate the claims at issue, let alone formulate a meaningful response.  Defendants' counterclaims should therefore be dismissed, or, alternatively, Defendants should be required to submit a more definite statement of their claims.

## STATEMENT OF FACTS

In March 2007, Defendants distributed to an investigator counterfeit Microsoft Office Professional 2003 ("Office 2003 Pro") software.  [Complaint, ¶ 12.]  By means including letters dated July 31, 2007, Microsoft notified Defendants that Microsoft received reports that Defendants were distributing counterfeit Microsoft software.  The letters informed Defendants that such conduct constitutes an infringement of Microsoft's copyrights and trademarks.  Microsoft demanded that Defendants cease and desist and also provided Defendants with information on how to avoid future infringement.  [Complaint, ¶ 13.]  Nevertheless, in April 2008, Defendants distributed to an investigator counterfeit Office Pro 2003 software.  [Complaint, ¶ 14.]

In their Answer, Defendants plead two separate counterclaims, neither of which possess any legal merit.  Defendants' counterclaims are baseless and violate the Federal Rules of Civil Procedure and should be dismissed without leave to amend.  Defendants do not identify any particular cause of action as the basis for their antitrust counterclaim or identify a discernable theory for recovery.  Defendants' antitrust counterclaim is merely a hybrid of various antitrust

phrases. Defendants cannot allege the requisite factual information to support their claim. Similarly, Defendants breach of warranty counterclaim does not state a common law or statutory basis for the claim. Instead, Defendants employ vague and conclusory pleading techniques to obfuscate the fact that the real issue of this case is Defendants' own illegal conduct.

## ARGUMENT

### I.      LEGAL STANDARD FOR DISMISSAL OF A COUNTERCLAIM

Under Rule 12(b)(6), a court can dismiss an action for failure to state a cause of action if it appears that no relief could be granted under any set of facts that could be proved. Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In conducting this review, the court must take the facts in the light most favorable to the plaintiff, but need not accept the legal conclusions drawn from the facts and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); Reynolds Metals Co. v. Columbia Gas Sys. Inc., 669 F. Supp. 744, 750 (E.D. Va. 1987). "The presence [] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint" cannot support the legal conclusion." Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001). The legal standard for dismissal of a counterclaim is the same as that for dismissal of a complaint. See, e.g., Western Capital Partners, LLC v. Brookhollow, LLC, 2007 WL 1202851 (E.D. Va. April 19, 2007); Casey Industrial, Inc. v. Seaboard Surety Co., 2006 WL 2126206 (E.D. Va. July 27, 2006).

In the antitrust context, there is a heightened standard of pleading as elucidated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In Twombly, the Court explained that although "a complaint attacked by Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant's] obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964; see also Estate Constr. Co. v. Miller & Smith Holding Co. Inc., 14 F.3d 213, 220 (4th Cir. 1994) (quoting Municipal Utilities Bd. of Alberville v. Alabama Power Co., 934 F.2d 1493, 1501 (11th Cir. 1991) ("a plaintiff must plead sufficient facts so that each element of the alleged antitrust violation can be identified.")). This requires claimants to plead sufficient facts so that each element of the alleged antitrust violation can be identified and cannot use terms that are conclusory. Miller & Smith, 14 F.3d at 220-21 (stating if the plaintiff has not alleged the facts necessary to support his claim, such facts will not be assumed by the court to exist). A claim will not withstand a motion to dismiss when "'facts which fail to outline a violation of the Sherman Act are presented in the language of antitrust law.'" Masco Contractor Services East, Inc. v. Beals, 279 F.Supp.2d 699, 704 (E.D. Va. 2003) (citations omitted).

  Defendants do not meet this pleading standard. Notably, Defendants fail to identify the applicable statutory or common law bases for their counterclaims, instead vaguely alleging that Microsoft "is in violation of Federal and Virginia antitrust laws" and that Microsoft committed "breach of express and/or implied warranties." Counterclaim, ¶¶ 113, 114. Defendants' antitrust counterclaim is a disjointed collection of various antitrust buzz words, labels and unsupported legal conclusions that are devoid of meaningful factual allegations. A generous reading of Defendants' muddled antitrust counterclaim suggests it is premised on conduct that is completely lawful under the intellectual property laws. Defendants appear to contend Microsoft violated the antitrust laws by commencing litigation to seek redress for infringement of its intellectual property rights and attempting to control the distribution of its software. Defendants claim that

as a result of Microsoft's alleged activities, they are entitled to damages. If accepted, however, Defendants' strained interpretation that such activities are unlawful would eviscerate well-established intellectual property laws and would provide a means for infringers to escape liability for their own wrongdoing. No aspect of the conduct alleged in the counterclaim exceeds the bounds of the legitimate exercise of Microsoft's intellectual property rights. Defendants' breach of warranty counterclaim defies logic in that Microsoft would neither expressly nor impliedly warrant *counterfeit* Microsoft software.

Defendants' allegations fail to support their counterclaims and they should be dismissed without leave to amend.

**II.    DEFENDANTS' ANTITRUST COUNTERCLAIM SHOULD BE DISMISSED**

    **A.    Defendants' Antitrust Counterclaim Fails Under The *Noerr-Pennington* Doctrine**

Defendants' antitrust counterclaim is barred by the *Noerr-Pennington* doctrine which yields antitrust immunity to those who seek to protect their intellectual property rights. The *Noerr-Pennington* doctrine was judicially created in antitrust law for the purpose of guaranteeing "citizens their First Amendment right to petition the government for redress without fear of antitrust liability." Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 398 (4th Cir. 2001) (citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136-39, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657, 669 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)).

Under the *Noerr-Pennington* doctrine of immunity, plaintiffs cannot incur antitrust liability for instituting a lawsuit unless the litigation is a sham. Baltimore Scrap, 237 F.3d at 399. To qualify as a sham, an action (1) must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and (2) must conceal "an

5

attempt to interfere directly with the business relationships of a competitor through the use [of] governmental process – as opposed to the outcome of that process – as an anticompetitive weapon." See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). An objectively reasonable effort to litigate cannot be a sham regardless of subjective intent. Id. at 57. A "reasonable belief that there is a chance that a claim may be held valid upon adjudication" provides an absolute defense precluding a finding of an antitrust violation. Id. at 62-63.

Defendants' antitrust counterclaim is premised on Microsoft initiating litigation against them for distributing counterfeit Microsoft software. Defendants allege that Microsoft filed the instant lawsuit "claiming infringement of its abandoned product lines in an attempt to stifle competition and prevent lawful resale of its products." Counterclaim, ¶ 117. Defendants further claim they have been "damaged by these antitrust violations of Microsoft by being forced to defend this lawsuit that is based upon Microsoft's improper attempts to eliminate competition…" Counterclaim, ¶ 120. Defendants' antitrust claim is barred because Defendants are claiming that Microsoft's lawsuit is itself anticompetitive, yet have not – and cannot – allege that Microsoft's action is a "sham," thereby abrogating Microsoft's antitrust immunity.

Defendants cannot reasonably argue that Microsoft's lawsuit against them is "objectively baseless" so as to negate Microsoft's antitrust immunity. Microsoft's infringement action against Defendants is not a tool to injure Defendants but rather is a means of seeking redress for the injury that was caused by Defendants. Microsoft's claims are based on Defendants' distribution of counterfeit Microsoft software that infringed Microsoft's registered copyrights and trademarks. Courts routinely grant motions to dismiss antitrust claims under Rule 12(b)(6) where the proffered antitrust violation was litigation arising out of infringement of an entity's

intellectual property rights.  See e.g., Amerimax Real Estate Partners, Inc. v. Re/Max International, Inc., 2006 WL 2794934 (N.D. Ill. September 26, 2006) (granting motion to dismiss antitrust claim where a party's prelitigation activities were legitimate efforts to protect a registered trademark); Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft, 189 F.Supp.2d 385 (E.D. Va. 2002) (granting motion to dismiss antitrust affirmative defense, stating defendant's claim was "far from frivolous or objectively meritless [since] the claim was based on registered trademarks:); Thermos Company v. Igloo Products, Inc., 1995 WL 745832 (N.D. Ill. December 13, 1995) (granting motion to dismiss defendants' antitrust counterclaim because plaintiff's trademark infringement action to protect a valid and incontestable mark was not a sham lawsuit).

It is clear from the face of Microsoft's complaint that Microsoft commenced its lawsuit not as an anticompetitive weapon, but as a good faith means of seeking redress for Defendants' distribution of counterfeit Microsoft software.  Because Microsoft's actions are immune from liability under the *Noerr-Pennington* doctrine, the court should grant Microsoft's motion to dismiss in its entirety.

**B.     Defendants Lack Standing To Pursue An Antitrust Claim**

Even if the *Noerr-Pennington* doctrine did not serve as a bar to Defendants' counterclaim, Defendants have nevertheless failed to sufficiently allege the elements of the purported antitrust counterclaim.  Defendants' antitrust counterclaim is a mystery in that it does not articulate the statutory basis for relief and is unclear as to what harm Defendants have suffered and how the antitrust laws provide a remedy.  The United States Supreme Court has long recognized that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." Associated General

Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) (quoting Hawaii v. Standard Oil Co., 405 U.S. 251,263, n. 14, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972)).  The Supreme Court has applied a doctrine of "antitrust standing" which determines not just whether the plaintiff alleges that it has been injured as a result of something forbidden by the antitrust laws, but "whether the plaintiff is a proper party to bring a private antitrust action."  Associated General, 459 U.S. at 535 n.31.  Thus, to bring a valid antitrust claim, a claimant must allege specific facts establishing injury to the party's business or property, which occurred by reason of the alleged antitrust violation.  Id. at 537 ("the question requires us to evaluate the plaintiffs harm, the alleged wrongdoing by the defendants, and the relationship between them").

To determine whether a claimant has antitrust standing, a court considers five factors identified in Associated General: (1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; (2) whether the harm was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws; (3) the directness of the alleged injury; (4) the existence of more direct victims of the alleged antitrust injury; and (5) problems of identifying damages and apportioning them among those directly and indirectly harmed.  See Kloth v. Microsoft Corp., 444 F.3d 312, 324 (4th Cir. 2006) (internal quotations and citations omitted); see also Associated General, 459 U.S. at 538-46; Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).  The first two of these antitrust standing factors together encompass the concept of "antitrust injury."  Id.

The allegations of Defendants' antitrust counterclaim, read even in the light most favorable to Defendants, fail to establish Defendants' antitrust standing.  Defendants, who are

distributors of counterfeit software, allege no facts showing that they suffered legitimate competitive harm.  The counterclaim contains no substantive allegations that Microsoft directed any alleged unlawful predatory conduct toward Defendants or that Defendants suffered any direct legitimate competitive injury at the hands of Microsoft.

           1.    *Defendants Did Not Suffer Antitrust Injury*

In order to maintain a valid antitrust claim, Defendants must prove that they suffered "antitrust injury".  Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 477, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977).  Antitrust injury is "injury to competition beyond the impact on the claimant," within the market within which the defendants compete.  See id. at 488; Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 641 (3d Cir. 1996) ("antitrust law aims to protect competition, not competitors, [a court] must analyze the antitrust injury question from the viewpoint of the consumer. . . . [P]laintiff must prove that challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare") (citations omitted).  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.  Brunswick Corp., 429 U.S. at 489.

Based on the allegations of Defendants' counterclaim, which must be taken as true for purposes of this motion, it appears that one of the theories for Defendants' purported antitrust claim is that Microsoft offered "pricing discounts" to "large retailers and computer manufacturers" and for home and student use that were allegedly not available on smaller scale transactions.  Counterclaim, ¶¶ 106, 114, 117.  According to Defendants, these supposed "sales incentives and discounts to large retailers" have the illicit effect of "eliminat[ing] small business competition."  Counterclaim, ¶ 117.  Defendants have not alleged any antitrust injury stemming from conduct by Microsoft that exceeds any rights conferred by its legal right to control the

reproduction and distribution of its intellectual property.  Taking Defendants' position to its logical conclusion, a business could never offer "pricing discounts" or offer different purchase options to different customers depending on the size of the transaction or the customer.  In other words, under Defendants' theory, a business would be engaging in unlawful anticompetitive conduct whenever it tailored its transactions to particular customers or attempted to secure high volume transactions through "pricing discounts" or other incentives.  Defendants cannot cast Microsoft's legitimate business conduct as unlawful anticompetitive conduct by merely reciting antitrust terminology and unsupported legal conclusions.  This clearly is not the type of harm that Congress sought to redress in providing a private remedy for violations of the antitrust law.

Further, Defendants have not alleged a sufficient causal connection between an antitrust violation and the harm they purportedly suffered or that Microsoft intended to cause that harm.  Defendants would like this Court to believe that Microsoft's purported anticompetitive conduct is somehow responsible for Defendants' dealings in counterfeit software.  Defendants' counterclaim suggests that Microsoft's purported "pricing discounts" drove Defendants to obtain counterfeit Microsoft software instead of more costly genuine, legitimate Microsoft software.  Under no set of circumstances could supposed "pricing discounts' offered on high volume transactions and to educational users constitute anticompetitive conduct justifying Defendants' distribution of counterfeit software to the unsuspecting public.

Rather than the antitrust issues that Defendants seek to introduce, what is really at issue in this case is Microsoft's legal right to control its intellectual property rights.  <u>See generally</u>, <u>Microsoft Corp. v. Computer Support Services of Carolina, Inc.</u>, 123 F.Supp.2d 945 (W.D.N.C. 2000).  The <u>Computer Support Services</u> case is instructive.  The defendants in that case asserted counterclaims for antitrust violations that, like the Defendants' counterclaim here, asked the

10

court to excuse their distribution of infringing Microsoft software on the ground that Microsoft engaged in monopolistic practices. See 123 F. Supp. 2d at 950.  In granting Microsoft's motion to dismiss the defendants' counterclaims, the court held that the defendants did not have antitrust standing because they failed to "allege specific facts establishing injury to [their business] which occurred by reason of the alleged antitrust violation." Id. (citing Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 537, 103 S. Ct. 897, 74 L.Ed.2d 723 (1983)); see also Syncsort Inc. v. Sequential Software, Inc., 50 F.Supp.2d 318, 336 (D.N.J. 1999) (granting motion to dismiss conclusory antitrust counterclaim).

As in Computer Support Services, Defendants fail to allege facts that could possibly establish an injury to the competitive process which the antitrust laws are intended to protect. "While Microsoft has the right to control the reproduction and distribution of its intellectual property, under no circumstances does [Defendants] have any right to acquire and distribute counterfeit…copies of Microsoft software or to claim injury with respect to the price of such software." Computer Support Services, 123 F.Supp.2d at 945.  Defendants allege no legitimate injury that may be redressed under the Sherman Act.  Accordingly, Defendants' failure to establish antitrust injury justifies dismissal of its antitrust counterclaim as a matter of law.

### C. Defendants Fail To Plead The Essential Elements Of A Monopolization Claim

In addition to failing to plead facts sufficient to show either antitrust standing, Defendants also fail to plead each of the required elements essential to state a valid count for monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2.

#### 1. *Defendants Fail to Identify Monopoly Power in Any Relevant Market*

Contrary to the pleading requirements, Defendants do not allege facts showing "monopoly power" in any relevant product or geographic markets in which Microsoft allegedly

11

possesses monopoly power. At most, Defendants state that the unavailability of Microsoft's supposed "pricing discounts" in its genuine software programs supposedly compelled Defendants to acquire counterfeit Microsoft software. In essence, Defendants complain of Microsoft's legitimate rights as a copyright holder to control the reproduction and distribution of its software – not an illegitimate use of monopoly power. These allegations are defective as a matter of law.

Monopoly power is "the power to control prices or exclude competition." U.S. v. Grinnell Corp., 384 U.S. 563, 571, 86 S.Ct. 1698, 16 L.Ed.3d 778 (1966) (quoting United States v. E.I. Du Pont de Nemours & Co., 351 U.S. 377, 391, 76 S. Ct. 994, 100 L. Ed. 1264 (1956)). Nowhere in Defendants' counterclaim, however, do Defendants allege anything more than conclusory allegations showing any such power by Microsoft in any particular product market. Defendants do not allege any market information about Microsoft. The counterclaim contains no specific allegations whatsoever regarding the typical indicia of monopoly power, including Microsoft's market presence, the existence of barriers to entry, or Microsoft's ability to control market prices or exclude competition. See Computer Support Services, 123 F.Supp.2d at 953. Defendants have not sufficiently pled Microsoft's purported monopoly power.

> 2. *Defendants Fail to Plead Predatory Conduct Demonstrating the Willful Acquisition or Maintenance of Monopoly Power*

To establish the element of willful acquisition or maintenance of monopoly power, a plaintiff must allege that the defendant acquired or maintained its market position through predatory or anticompetitive conduct. Grinnell, 384 U.S. at 571; Cowley v. Braden Industries, Inc., 613 F.2d 751,756 (9th Cir. 1980). This willful acquisition or maintenance must be "distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Grinnell, 384 U.S. at 571.

Defendants here simply allege that Microsoft has a "near monopoly" and that Microsoft's purported antitrust violations are "willful and/or flagrant." Counterclaim, ¶¶ 116, 118. Defendants do not provide any more detail.

Defendants' allegations are not sufficient to state a monopolization claim based on anticompetitive conduct. Defendants do not – and cannot – dispute that a software developer such as Microsoft has both the right to control the production and distribution of its own intellectual property and the right to refuse to deal with any company. See, e.g., 17 U.S.C. § 106; Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 107 (4th Cir. 1991) (trademark holder has the right to control the quality of its products through authorized distributors). It is a cornerstone of antitrust law that a supplier has "a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 760-61,104 S. Ct. 1464, 79 L. Ed. 2d 775 (1984). Even with accepting Defendants' purported antitrust allegations as true for purposes of this motion, Defendant's alleged "pricing discounts" or "sales incentives" simply cannot be illegal monopolization. Defendants have failed to plead any of the elements necessary to support a monopolization claim under Section 2 of the Sherman Act. Accordingly, the Defendants' antitrust counterclaim should be dismissed.

**D.    Defendants Fail To Plead The Essential Elements Of An Attempted Monopolization Claim Under The Sherman Act**

To the extent Defendants attempt to assert a claim for attempted monopolization under Section 2 of the Sherman Act, their counterclaim is nevertheless defective. To state a claim for attempted monopolization, Defendants must plead the following elements: (1) a relevant geographic and product market; (2) that Microsoft has engaged in predatory or anticompetitive conduct – as opposed to vigorous, but lawful, competition; (3) that Microsoft "specifically intended" to acquire monopoly power within the market; and (4) that Microsoft's actions have

achieved a "dangerous probability of success." Spectrum Sports v. McQuillan, 506 U.S. 447, 446-49, 113 S. Ct. 884, 890-92, 122 L. Ed. 2d 247 (1993); Masco Contractor Services East, Inc. v. Beals, 279 F.Supp.2d 699, 708 (E.D. Va. 2003).

Defendants allege no predatory or otherwise unlawful conduct by Microsoft, or that Microsoft possessed the specific intent to acquire monopoly power within a relevant market. Indeed, the allegations as pled establish only that Microsoft seeks to protect the unauthorized and illegal use of its intellectual property. Thus, an attempted monopolization claim must fail.[1]

### E. Defendants Have Not Stated An Antitrust Claim Under Virginia Law

Defendants' antitrust claim under Virginia law is similarly flawed. Defendants do not allege which Virginia statute or common law Microsoft has violated; rather, the counterclaim only states that "Microsoft is in violation of Federal and Virginia antitrust laws." Counterclaim, ¶ 114. Assuming Defendants' vague reference is to the Virginia Antitrust Act, claims made under that Act are "governed by the same standard as its claims under the Sherman Antitrust Act." See Va. Vermiculite, Ltd. v. W.R. Grace & Co., 965 F.Supp.802, 829 (W.D. Va. 1997), rev'd on other grounds, 136 F.3d 535 (4th Cir. 1998). Accordingly, for the same reasons that Defendants' Sherman Act claims are deficient, Defendants' Virginia antitrust law claim is insufficient.

### III. DEFENDANTS' BREACH OF WARRANTY CLAIM SHOULD BE DISMISSED

Defendants' breach of warranty claim is premised on their allegations that Microsoft's "End User License Agreement" supposedly warrants that the activation process associated with Microsoft software will prevent the unlicensed use of that software. Counterclaim, ¶ 110.

---

[1] Defendants' counterclaim also includes reference to purported "tying schemes." Counterclaim, ¶¶ 105, 106. To the extent Defendants are attempting to state a claim for unreasonable restraint of trade under Section 1 of the Sherman Act, Defendants' allegations are insufficient as insufficient as a matter of law. See Oksanen v. Page Memorial Hospital, 945 F.2d 696, 702 (4th Cir. 1991).

Defendants further allege that if Microsoft prevails on its claims of copyright and trademark infringement, then Microsoft breached its warranties associated with its "activation software product.' Counterclaim, ¶ 111.  In essence, Defendants contend that if they distributed counterfeit Microsoft software, it was Microsoft's fault because "Microsoft's own activation product failed to detect such elements and must have therefore been defective."  Counterclaim, ¶ 112.

This case is solely about Defendants' distribution of *counterfeit* Microsoft software. Counterfeit Microsoft software by its very nature cannot be subject to any express or implied warranty by Microsoft since it did not originate from Microsoft.  Accepting Defendants' allegations as true, any alleged warranties would pertain to genuine Microsoft software – not the counterfeit and unauthorized software in which Defendants deal.  The Court should dismiss Defendants' breach of warranty counterclaim without leave to amend.

### IV.     IN THE ALTERNATIVE DEFENDANTS SHOULD BE REQUIRED TO FILE A MORE DEFINITE STATEMENT OF THEIR COUNTERCLAIMS

In the event the Court determines that Defendants have satisfied the pleading standard set forth in Rule 8, which they did not, Defendants should be required, at the very least, to provide a more definite statement of their counterclaims pursuant to Federal Rule of Civil Procedure 12(e). Rule 12(e) provides that where a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," the party may move for a more definite statement.  Fed. R. Civ. P. 12(e).  In order for Microsoft to prepare a meaningful and reasoned response, Defendants should be required to provide information sufficient to permit Microsoft to understand what causes of action are being pleaded and what facts establish each element of the claims.

## **CONCLUSION**

For the foregoing reasons, Microsoft respectfully requests this Court dismiss Defendants' counterclaims, or alternatively, require Defendants to submit a more definite statement of their claims.

DATED this 4th day of August, 2008.

                                          Respectfully submitted,

                                          By_____/s/_____
                                                  John K. Roche (VSB# 68594)
                                                  Perkins Coie, LLP
                                                  607 Fourteenth Street N.W., Suite 800
                                                  Washington D.C.  20005-2003
                                                  Phone:  202-434-1627
                                                  Fax:  202-654-9106
                                                  JRoche@perkinscoie.com

                                                  Attorney for Plaintiff Microsoft Corporation

## **CERTIFICATE OF SERVICE**

I hereby certify this 4th day of August, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following individuals:

Jenine Elco Graves, VSB# 44877
QUINTO & WILKS, P.C.
3441 Commission Court
Lake Ridge, Virginia  22192
Phone: 703-492-9955
Fax: 703-492-9455
jgraves@quintowilks.com

Co-counsel for Defendants

Timothy W. Graves, VSB# 45414
A ATTORNEY LLC
9300 Grant Avenue, Suite 203
Manassas, Virginia  20110
Phone: 703-365-8306
Fax: 703-365-8307
a-atty@verizon.net

Co-counsel for Defendants

By_____/s/_____
　　John K. Roche (VSB# 68594)
　　Perkins Coie, LLP
　　607 Fourteenth Street N.W., Suite 800
　　Washington D.C.  20005-2003
　　Phone:  202-434-1627
　　Fax:  202-654-9106
　　JRoche@perkinscoie.com

　　Attorney for Plaintiff Microsoft Corporation