IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,            )<br>                                                        )<br>         Plaintiff,                           )        Case No. 1:08cv00596-GBL-JFA<br>                                                        )<br>         v.                                       )<br>                                                        )<br>L&Y ELECTRONICS, INC., *et al.*,      )<br>                                                        )<br>         Defendants.                      )<br>                                                        )<br>_____)  | |

**PLAINTIFF MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANTS'
FOURTH, FIFTH, EIGHTH AND NINTH AFFIRMATIVE DEFENSES**

Plaintiff Microsoft Corporation ("Microsoft") submits this Memorandum in support of its motion to strike the Fourth, Fifth, Eighth and Ninth Affirmative Defenses set forth in the Answer, Affirmative Defenses and Counterclaims [Dkt. No. 9, July 14, 2008] of defendants and counterclaimants L&Y Electronics, Inc., a Virginia corporation, John A. Linton, an individual, and Sangsoon Linton, an individual, (collectively, "Defendants").

## INTRODUCTION

Defendants distributed counterfeit Microsoft software with a cavalier disregard for Microsoft's intellectual property rights, reasoning that "[c]ounterfeiting an equal or superior product does not damage [Microsoft.]" [Answer, ¶ 82] Defendants attempt to excuse and obscure their unlawful distribution of counterfeit software by asserting copyright misuse, trademark misuse, antitrust law violations, and unclean hands affirmative defenses. Defendants' proffered defenses have no relation to the claims at issue in this action. Defendants cannot legitimately allege that Microsoft dirtied its hands in acquiring the rights it asserts in its complaint or used its copyrights or trademarks to prohibit the independent development or use of a competing product by Defendants. The affirmative defenses are legally insufficient and should be stricken without leave to amend.

## BACKGROUND FACTS

In March 2007, Defendants distributed to an investigator counterfeit Microsoft Office Professional 2003 ("Office 2003 Pro") software. [Complaint, ¶ 12.] By means including letters dated July 31, 2007, Microsoft notified Defendants that Microsoft received reports that Defendants were distributing counterfeit Microsoft software. The letters informed Defendants that such conduct constitutes an infringement of Microsoft's copyrights and trademarks. Microsoft demanded that Defendants cease and desist and also provided Defendants with information on how to avoid future infringement. [Complaint, ¶ 13.] Nevertheless, in April 2008, Defendants distributed to an investigator counterfeit Office Pro 2003 software. [Complaint, ¶ 14.]

In their Answer, Defendants assert twelve separate affirmative defenses. While all of the defenses are without merit, the Fourth, Fifth, Eighth and Ninth Affirmative Defenses are inadequate on their face and should be dismissed as a matter of law. The defenses at issue allege that Microsoft's Complaint is barred because: "Plaintiff has misused and continues to misuse its copyrights in the product known as Office Pro 2003" (Fourth Affirmative Defense), "Plaintiff is attempting to use its trademarks in a manner adverse to the public policy embodied in trademark law" (Fifth Affirmative Defense), "Plaintiff is in violation of antitrust laws" (Eighth Affirmative Defense), and due to Microsoft's supposed "unclean hands" (Ninth Affirmative Defense). [Answer, pp. 13-19.]

These affirmative defenses are insufficient as a matter of law because they are not related in any way to this action. This case involves Defendants' distribution of *counterfeit* Microsoft software in violation of federal law and has nothing to do with the distribution of genuine Microsoft software or the development of competing software. Defendants' allegations of copyright and trademark misuse, antitrust violations and unclean hands do not share a common nexus with—and cannot excuse—Defendants' willful infringement of

Microsoft's copyrights and trademarks. These affirmative defenses cannot be considered defenses to the allegations of the Complaint and should be stricken without leave to amend.

## ARGUMENT

### I. STANDARDS FOR MOTION TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure permits the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); see also Microsoft Corp. v. Computer Support Services of Carolina, Inc., 123 F.Supp.2d 945, 949-950 (W.D.N.C. 2000). An affirmative defense is insufficient as a matter of law where the defense cannot succeed under any circumstances. Equal Employment Opportunity Comm'n v. First Nat'l Bank of Jackson, 614 F.2d 1004, 1008 (5th Cir. 1980) (stating an affirmative defense subject to a motion to strike where "the plaintiff would succeed despite any set of facts which could be proved in support of the defense"); Federal Deposit Ins. Corp. v. Modular Homes, Inc., 859 F. Supp. 117, 120 (D.N.J. 1994). Where an insufficient affirmative defense might confuse or complicate the issues in the case, it should be stricken so that the plaintiff is not prejudiced and the court is not burdened with the time and expense of meaningless discovery. See U.S. v. Iron Mountain Mines, Inc., 812 F. Supp. 1528, 1535 (E.D. Cal. 1992) (striking defense of failure to mitigate damages and equitable defenses, including unclean hands, where defenses were not applicable to plaintiff's claims (citing Sidney v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983)); Computer Support Services, 123 F.Supp.2d at 949-950 ("Courts have recognized judicial economy as a proper basis for striking insufficient defenses."). An affirmative defense is prejudicial to a plaintiff, for example, where it will likely expose a plaintiff to unnecessary litigation expenses. Simon v. Manufacturers Hanover Trust Co., 849 F. Supp. 880, 883 (S.D.N.Y. 1994).

## II. THE COURT SHOULD STRIKE DEFENDANTS' COPYRIGHT MISUSE, TRADEMARK MISUSE AND UNCLEAN HANDS AFFIRMATIVE DEFENSES

Defendants seek to shield themselves from liability for their distribution of counterfeit Microsoft software by asserting irrelevant defenses of copyright misuse, trademark misuse and unclean hands. See Answer at pp. 13-18. (Fourth, Fifth and Ninth Affirmative Defenses). Defendants' copyright and trademark misuse and unclean hands defenses are insufficient because they fail to allege any nexus between Microsoft's supposed wrongful conduct and the allegations against Defendants and fail to allege any restrictions on using or developing competing software.

### A. The Misuse And Unclean Hands Defenses Are Legally Insufficient

The defenses of copyright and trademark misuse are a species of the defense of unclean hands. See Coca-Cola Co. v. Howard Johnson Co., 386 F. Supp. 330, 333-335 (N.D. Ga. 1974); see also People for Ethical Treatment of Animals, Inc. v. Doughney, 113 F. Supp. 2d 915, 921 (E.D. Va. 2000); Computer Support Services, 123 F.Supp.2d at 955. The defense of unclean hands, by itself or by virtue of copyright and trademark misuse, requires that the plaintiff's alleged misconduct related directly to the merits of the controversy between the parties. "[T]hat is, when the tawdry acts in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995) (internal quotations and citation omitted); Saxon v. Blann, 968 F.2d 676, 680 (8th Cir. 1992); Tveter v. AB Turn-O-Matic, 633 F.2d 831, 838-39 (9th Cir. 1980); Mitchell Bros. Film Group v. Cinema Adult Theater, 604 F.2d 852, 863 (5th Cir. 1979). "[M]isconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands." Republic Molding Corp. v. B. W. Photo Utilities, 319 F.2d 347, 349 (9th Cir. 1963). "What is material is not that plaintiff's hands are dirty, but that he dirtied them in acquiring the rights he now asserts." PETA, 113 F. Supp. 2d at 921.

1. Defendants' Defenses of Copyright Misuse and Unclean Hands Are Inapplicable

Defendants' copyright misuse and unclean hands affirmative defenses are completely unrelated to the claims at issue and should be stricken without leave to amend. The copyright misuse defense was first articulated by the Fourth Circuit in Lasercomb America, Inc. v. Reynolds, 911 F.2d 970 (4th Cir. 1990). The defense of copyright abuse "forbids the use of [a] copyright to secure an exclusive right or limited monopoly not granted by the Copyright Act." Lasercomb, 911 F.2d at 977-79. A copyright misuse defense is *not* applicable where a copyright owner places restrictions solely on the use of *its own* works. Computer Support Services, 123 F.Supp.2d at 955-56 (citing the wealth of cases in which the copyright misuse defense has been summarily rejected "where the copyright owner did not prohibit its licensees from either using or independently developing a competing product"). "An essential element of the defense of copyright abuse is that the owner somehow misused or abused its copyright – beyond the ordinary and proper protections it affords – to prevent others from competing in the market." Id. at 955; see also Coleman v. ESPN, Inc., 764 F.Supp. 290, 295 (S.D.N.Y. 1991) (the copyright misuse defense applies where the copyright holder has "impermissibly extended the copyright monopoly in a manner which constitutes an unreasonable restraint of trade"). For example, in Service & Training, Inc. v. Data General Corp., 963 F.2d 680, 690 (4th Cir. 1992), the court rejected a purported copyright misuse defense that was based on a restriction a copyright owner placed on the use of its own software, because such conduct was not "violative of the public policy embodied in the grant of a copyright." Id. at 690; see also Advanced Computer Services of Michigan, Inc. v. Mai Systems Corp., 845 F. Supp. 356, 367 (E.D. Va. 1994) (rejecting the applicability of a copyright misuse defense to a copyright owner's inclusion of alleged tying provisions in its license agreements because the license agreements did not include restrictions designed to prevent the alleged infringer from developing competing software).

The Lasercomb decision is instructive as to the nature of conduct that constitutes copyright misuse. In Lasercomb, the holder of a copyright to software offered licenses for the software, but only on the condition that the licensee agree not to develop and sell any competing software that had the same utility as that provided by the licensed software. The licensing agreement contained broad language that, for a term of 99 years, suppressed any attempt to independently implement the idea expressed, and forbade the licensee and its employees from developing or assisting in the development of any kind of computer-assisted die-making software. Id. at 973. The Fourth Circuit reversed a district court decision rejecting the misuse defense and held that misuse had been established as a matter of law. Id. at 979. The Fourth Circuit explained that the test was not whether the non-competition terms of the licenses violated federal antitrust laws, "but whether the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." Id. at 978. The court recognized that a copyright of course entitles the holder to prohibit copying. The misuse arose from the plaintiff's attempt to use its copyright on a particular expression of an idea "to control competition in an area outside the copyright." 911 F.2d at 979.

Unlike the conduct at issue in Lasercomb, Microsoft is not using its copyrights in any manner to control Defendants' ability to develop and sell a competing product. The case of Microsoft Corporation v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 684 (M.D. Fla. 2002), is on point. In Jesse's Computers & Repair, Microsoft filed a complaint against the defendants for the alleged distribution of infringing Microsoft software. Id. at 682-83. In response, the defendants raised a copyright misuse affirmative defense. Id. at 684. The court granted Microsoft's motion to strike due in part to the defendants' failure to allege facts showing that Microsoft used its copyrights to prohibit directly the independent development or use of a competing product. Id. at 684-85. The court further emphasized the requirement of a nexus between the plaintiff's purported misconduct and the defendants' infringement and concluded that "Defendant has not only failed to disclose the specific wrongful conduct

in which the Plaintiff has purportedly engaged but the Defendant has also failed to establish how the Plaintiff's alleged wrongful conduct is directly related to the current case." Id. at 685.

Here, as in Jesse's Computers & Repair, there is no nexus between any supposed misconduct by Microsoft and Defendants' infringement of Microsoft's intellectual property rights.  Defendants apparently rely on two different theories for their copyright misuse and unclean hands affirmative defenses, neither of which establish the requisite nexus.  Defendants first suggest that Microsoft somehow misused its copyrights by introducing a new software product, "Office 2007," into the market and that some users supposedly "find the use of Office 2007 products to be inferior to Office Pro 2003."  Answer, ¶¶ 72-73.  Under Defendants' flawed theory, it would be misuse for Microsoft (or any other copyright holder) to develop evolving technologies and create new products.  However Defendants have not alleged that Microsoft abused its copyrights in a way that prevented Defendants from competing in the marketplace.  To the contrary, Microsoft has done nothing to prohibit Defendants' development or use of a legitimate product that competes with Microsoft software.  Microsoft's introduction of new, genuine software cannot justify Defendants' distribution of counterfeit Microsoft software.

Defendants further allege that Microsoft purportedly misused its copyrights and dirtied its hands by initiating litigation against Defendants and other entities in an attempt to "forc[e] the end user into purchasing Office 2007." Answer, ¶¶ 74, 77, 78, 93.  Defendants' position is without merit.  Microsoft's lawsuits against Defendants and other entities to protect its own copyrights are protected by the First Amendment right to petition, and cannot be a basis for a copyright misuse claim.  See Cardtoons, L.C. v. Major League Baseball Players Ass'n, 208 F.3d 885, 889-90 (10th Cir. 2000) (discussing *Noerr-Pennington* immunity as extending outside of the antitrust context where it derives from the First Amendment right to petition).  "A good faith attempt to enforce a copyright violation does

not affect antitrust laws." Original Appalachian Artworks, Inc. v. The McCall Pattern Col., 228 U.S.P.Q. 879, 1985 WL 6011, at *2 (N.D. Ga. Oct. 22, 1985). As discussed in greater detail in Microsoft's Motion to Dismiss, litigation can only constitute misuse when it is shown to be "sham litigation," but sham litigation is such that is "objectively baseless" and commenced as an "anticompetitive weapon." Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Defendants have failed to allege how Microsoft's actions are an attempt to interfere with competition in the market, rather than a straightforward attempt to protect its *own* copyrights. Microsoft is simply seeking redress for Defendants' distributions of counterfeit Microsoft software to their unsuspecting customers. As such, Defendants' copyright misuse and unclean hands affirmative defenses should be stricken without leave to amend.

        2.       Defendants' Trademark Misuse Affirmative Defense Is Insufficient

Defendants' trademark misuse affirmative defense also fails as a matter of law and should be stricken. As a species of an unclean hands defense, a trademark misuse defense must allege facts showing that there is a nexus with the claims against which the defense is being asserted. For example, in Tveter, the defendant could not evade liability for trademark infringement by claiming the plaintiff made a misrepresentation on a trademarked product. 633 F.2d at 838-39. The circuit court held that the alleged misuse of the trademark was not a valid defense because the defendant failed to establish a relationship between the misuse and the plaintiff's acquisition of its trademark rights. As a result, there was no basis to conclude that it was inequitable for the plaintiff to enforce its rights. Id.; see also Computer Support Services, 123 F.Supp.2d at 955 (holding in the context of the distribution of infringing Microsoft software that equitable defenses based on unclean hands require a showing that there is a nexus between the plaintiff's purported misconduct and the defendant's infringing acts).

Defendants' trademark misuse defense is again premised on Microsoft commencing litigation against Defendants for distributing counterfeit Microsoft software. Answer, ¶¶ 81, 84. It is clear, however, that where a trademark has been lawfully acquired, subsequent conduct permissible under the trademark laws cannot constitute abuse or misuse of one's trademarks. See Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d 285, 291 (10th Cir. 1974) (citing Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705 (7th Cir. 1972). This permissible conduct includes the initiation of litigation against an infringer. Id.; Armstrong Cork Co. v. Armstrong Plastic Covers Co., 434 F. Supp. 860, 872 (E.D. Mo. 1977) ("good faith enforcement by the plaintiff of its trademark rights does not constitute an antitrust violation"). As discussed above, Microsoft's legitimate claim for trademark infringement based on Defendants' dealings in counterfeit Microsoft software cannot constitute trademark misuse. Professional Real Estate Investors, 508 U.S. at 60. Defendants attempt to call into question the strength of Microsoft's infringement claims against them by remarkably contending their unlawful conduct should be of no concern to Microsoft because "counterfeiting an equal or superior product does not damage Plaintiff's reputation" and "an exact counterfeit does not confuse the public." Answer, ¶¶ 82. Defendants' position is disturbing. The distribution of counterfeit goods is a criminal offense under federal law, the violation of which imposes a penalty of a monetary fine of up to $2,000,000 or imprisonment for up to 10 years, or both. See 18 U.S.C. § 2320. The Commonwealth of Virginia also recognized the need to protect the public from counterfeit goods and trademark infringement and enacted a statute that provides for civil and criminal penalties for the distribution of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of such goods or services." Va. Code §§ 59.1-92.1, et seq.[1] Defendants' attempt to minimize the impact of their trafficking

---

[1] Effective July 1, 2008, the Virginia Trademark and Service Mark Act, Va. Code §§ 59.1-92.1, et

in counterfeit Microsoft software does not change the fact that Defendants infringed Microsoft's registered trademarks. Microsoft's resulting litigation against Defendants is not misuse of its trademarks.

Further, Defendants cannot in good faith allege any misconduct on the part of Microsoft *that directly and adversely affected Defendants*. Defendants have no relationship with Microsoft with respect to the counterfeit and infringing Microsoft software at issue in this case, except to prey upon the public by distributing such items. Defendants cannot now, nor will they ever be able to explain why any purported trademark misuse or unidentified misconduct involving Microsoft gives them the right to mislead the unsuspecting public by distributing counterfeit Microsoft software. Defendants simply cannot prove a set of facts to support their trademark misuse defenses that would defeat Microsoft's complaint. Accordingly, Defendants' trademark misuse, copyright misuse and unclean hands affirmative defenses should be stricken without leave to amend.

### III.     THE COURT SHOULD STRIKE DEFENDANTS' ANTITRUST AFFIRMATIVE DEFENSE.

#### A.     Defendants Fail To Allege Any Nexus Between Microsoft's Allegations And Their Purported Antitrust Affirmative Defense

Defendants' affirmative defense asserting that Microsoft has engaged in anti-competitive practices and monopolization efforts is also fatally flawed because it fails to allege any nexus between the purported anticompetitive conduct and the allegations against Defendants. Answer, ¶¶ 89-91. Similar to an unclean hands defense, an antitrust defense also requires Defendants to show a nexus between the purported antitrust violation and the Defendants' infringing acts. See Coca-Cola Co., 386 F. Supp. at 337; see also Saxon v.

---

seq., was amended to include protection for federally-registered trademarks and service marks. Previously, the code only protected marks registered within the Commonwealth. Microsoft is presently assessing whether to seek leave to amend its complaint to add a claim under the Virginia Trademark and Service Mark Act.

Blann, 968 F.2d 676, 680 (8th Cir. 1992). "Only a party who is directly and adversely affected by the alleged antitrust violations can raise the antitrust defense against claims of trademark infringement." Central Benefits Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n., 711 F. Supp. 1423, 1434 (S.D. Ohio 1989). The mere fact that a plaintiff has allegedly violated antitrust laws clearly does not allow all infringers to escape liability for violating the plaintiff's copyrights and trademarks. Indeed, even where a plaintiff has "violated the antitrust laws, or any other laws, in some matter completely unrelated to the case before the Court [it] does not result in 'unclean hands' on the plaintiff's part. There must be some logical connection between the right plaintiff asserts and the activity constituting unclean hands. Otherwise, the courts must be willing to serve as a battleground for extensive antitrust litigation whenever a trademark holder seeks any, totally unrelated, equitable relief." Coca-Cola Co., 386 F. Supp. at 337. "To bring the purported antitrust violation into the action would obfuscate the issues and convert a relatively straight-forward trademark infringement case into a complex antitrust case." Id.

Defendants cannot establish the requisite nexus between Microsoft's supposed antitrust violation and Defendants' own acts of infringement. Defendants intimate that Microsoft's purported "pricing discounts" drove Defendants to obtain counterfeit Microsoft software instead of more costly genuine, legitimate Microsoft software. Answer, ¶ 89. Clearly Defendants have asserted their purported antitrust defense because they wish to "obfuscate the issues and convert a relatively straight-forward trademark infringement case into a complex antitrust case." See Coca-Cola Co., 386 F. Supp. at 337. Their Eighth Affirmative Defense is insufficient as a matter of law, and should be stricken without leave to amend in order to avoid the unnecessary time and expense of litigating an issue that cannot constitute a viable defense to Microsoft claims.

### B. Defendants Have Not Sufficiently Pled Their Eight Affirmative Defense

Defendants' antitrust affirmative defense must fail because it contains nothing more than generic, conclusory allegations. A pleading party "must do more than cite relevant antitrust language to state a claim for relief," TV Communications Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1024 (10th Cir. 1992), as a party "will get nowhere merely by dressing [its claims] up in the language of antitrust." Rutman Wine Co. v. E&J Gallo Winery, 829 F.2d 729, 736 (9th Cir. 1987) (internal citation omitted); see also Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984). "The use of antitrust 'buzz words' does not supply the factual circumstances necessary to support" antitrust claims. TV Communications, 964 F.2d at 1026; see Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (holding that within the context of sustaining a motion to dismiss an antitrust claim, the court is "not . . . required to accept as true unsupported conclusions and unwarranted inferences").

Here, Defendants attempt to escape liability by using conclusory antitrust jargon, contending Microsoft's supposed conduct "substantially lessen[s] competition and create[s] a monopoly." Answer, ¶ 89. Defendants have not provided meaningul factual allegations concerning any antitrust violations by Microsoft or plead the necessary elements of the defense,[2] let alone explained how any such conduct concerning genuine Microsoft software excuses their distribution of *counterfeit* Microsoft software. As such, Defendants' defense does not meet the standards of Rule 8 of the Federal Rules of Civil Procedure, which requires a short and plain statement of the defense, and is insufficient to raise an antitrust affirmative defense as a matter of law. See The Interface Group, Inc. v. Massachusetts Port Auth., 816

---

[2] As set forth in Microsoft's motion to dismiss Defendants' antitrust counterclaim, Defendants failed to plead the requisite antitrust injury and antitrust standing in both their counterclaim and their affirmative defense. Associated General Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

-13-

F.2d 9, 12 (1st Cir. 1987) (affirming dismissal of antitrust claim where complaint failed to allege anticompetitive conduct or injury to competition); see also Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294-95 (7th Cir. 1989) (striking as legally insufficient defenses that consisted of bare-bones, conclusory allegations, omitted any short plain statement of facts, and failed to allege the necessary elements of the defenses).

## CONCLUSION

For the reasons set forth above, Microsoft respectfully requests that the Court strike Defendants' Fourth, Fifth, Eighth and Ninth Affirmative Defenses.

DATED this 4th day of August, 2008.

Respectfully submitted,

By_____/s/_____
John K. Roche (VSB# 68594)
Perkins Coie, LLP
607 Fourteenth Street N.W., Suite 800
Washington D.C.  20005-2003
Phone:  202-434-1627
Fax:  202-654-9106
JRoche@perkinscoie.com

Attorney for Plaintiff Microsoft Corporation

## CERTIFICATE OF SERVICE

I hereby certify this 4th day of August, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following individuals:

| | |
|---|---|
| Jenine Elco Graves, VSB# 44877<br>QUINTO & WILKS, P.C.<br>3441 Commission Court<br>Lake Ridge, Virginia  22192<br>Phone: 703-492-9955<br>Fax: 703-492-9455<br>jgraves@quintowilks.com<br><br>Co-counsel for Defendants | Timothy W. Graves, VSB# 45414<br>A ATTORNEY LLC<br>9300 Grant Avenue, Suite 203<br>Manassas, Virginia  20110<br>Phone: 703-365-8306<br>Fax: 703-365-8307<br>a-atty@verizon.net<br><br>Co-counsel for Defendants |

By_____/s/_____
　　　John K. Roche (VSB# 68594)
　　　Perkins Coie, LLP
　　　607 Fourteenth Street N.W., Suite 800
　　　Washington D.C.  20005-2003
　　　Phone:  202-434-1627
　　　Fax:  202-654-9106
　　　JRoche@perkinscoie.com

　　　Attorney for Plaintiff Microsoft Corporation