IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

**DISTRICT JUDGE GERALD BRUCE LEE**
**MAGISTRATE JUDGE JOHN F. ANDERSON**

| | |
|---|---|
| **MICROSOFT CORPORATION** :<br><br> *Plaintiff,* :<br><br> **v.** :<br><br> **L & Y ELECTRONICS, INC.,** :<br><br> **JOHN A. LINTON, and** :<br><br> **SANGSOON LINTON** :<br><br> *Defendants.* : | **CASE NO. 1:08cv00596-GBL-JFA** |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' FOURTH, FIFTH, EIGHTH AND NINTH AFFIRMATIVE DEFENSES

COME NOW Defendants, L & Y ELECTRONICS, INC., JOHN A. LINTON and SANGSOON LINTON, by counsel, and submit this Memorandum in opposition to Plaintiff, Microsoft Corporation's ("Microsoft") Motion to Strike [Dkt. No. 20, Filed, August 4, 2008].

### I.    INTRODUCTION – EQUITABLE DEFENSES TO INEQUITABLE LITIGATION

Contrary to Microsoft's inflammatory language, L&Y Electronics, Inc. ("L&Y") is a licensed Microsoft OEM System Builder that is in the business of respecting Microsoft's intellectual property rights and takes all reasonable steps to ensure that it does not sell infringing software. Unlike others being sued by Microsoft, L&Y uses Microsoft's activation software to activate Microsoft products prior to transferring said products to its customers. L&Y, as a business practice for manufactured computers, transfers Microsoft software upon receiving confirmation from Microsoft's activation server that the product is genuine. Further, each L&Y

customer receives the original packaging and compact disc containing the installable software. Microsoft, through its regional director Michael Fuller, has approved this procedure and has confirmed that L&Y has taken and is taking all required and/or reasonable measures to comply with Microsoft's requests and to prevent the dissemination of infringing products. L&Y continues to be a licensed Microsoft OEM System Builder and Microsoft has not revoked L&Y's licensure status.

Microsoft asserts in its Complaint that L&Y allegedly sold to Microsoft two counterfeit copies of its product Office Professional Edition 2003 ("Office Pro 2003"). The gross profit to L&Y for these transactions were less than $60.00. L&Y would not knowingly or intentionally risk its Microsoft OEM System Builder license and its reputation in the business community for $60.00.[1]

The actual damages to Microsoft are $0.00, because at the time of these purchases Microsoft had already abandoned Office Pro 2003 and knowingly purchased the allegedly infringing software products as used software. At the time of the events alleged in its Complaint, Microsoft was no longer receiving any revenue or profits from new or used sales of Office Pro 2003.

Microsoft, in an apparent abandonment of all equitable principles and common sense, seeks over $210,000.00 in statutory damages from Defendants. In response, Defendants have raised equitable, statutory and common-law defenses. But for Microsoft seeking non-existent damages that it has not incurred, Defendants would not raise these defenses. Microsoft's continued pursuit of unjustified statutory damages leaves Defendants no alternative but to defend.

However, defending against statutory damages does not mean or infer that L&Y is seeking carte blanche ability to freely infringe Microsoft's intellectual property. Just the opposite is true. L&Y is committed to selling only properly licensed software. L&Y has repeatedly requested that Microsoft provide instruction and/or additional procedures that it can implement to ensure that only genuine software is sold to its customers. Microsoft has yet to identify any steps or procedures that L&Y has not already implemented.

Microsoft seeks to strike four of Defendants' twelve affirmative defenses namely, antitrust law violations, copyright misuse, trademark misuse, and unclean hands. U.S. trademark law provides for three of these defenses. 15 U.S.C. § 1115 (b) (7) identifies antitrust law violations as a defense to trademark infringement. Similarly, 15 U.S.C. § 1115 (b) (9) identifies "equitable principles" as defenses that include trademark misuse and unclean hands.

Copyright misuse is the judicially created defense that originated in the Fourth Circuit case of *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970 (C.A.4 (N.C.), 1990). This defense is an extension of the equitable patent misuse defense. In accordance with *Lasercomb*, copyright misuse applies in copyright infringement actions.

II.     RULE 12 (f) – PERMISSIVE MOTION TO STRIKE

Motions to strike affirmative defenses are strongly disfavored and should only be granted under limited circumstances where: "(1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law, the resolution of which would allow the defense to succeed and (3) plaintiff shows prejudice if the defense is allowed to stand." *Umg Recordings, Inc. v. Lindor,* 531 F.Supp.2d 453, 458 (E.D.N.Y. 2007) (*citing Microsoft Corp. v. PTI, Inc.*2003 WL 21406291). In this case, Microsoft seeks extraordinary relief by requesting

---

[1] In these transactions, Microsoft also purchased three copies of Microsoft Windows XP and another copy of Office Pro 2003. Microsoft does not allege that these four copies were counterfeit.

that the Court prohibit Defendants from asserting several of their equitable and statutory affirmative defenses.

Federal Rule of Civil Procedure 12(f) permits a court to strike any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. This authority is permissive, and a court may exercise its discretion not to strike a defense even upon finding that such defense is insufficient. However, the converse application is mandatory. Federal Rule of Civil Procedure 12(f) does not permit the court to strike a defense that is legally sufficient.

A defense is sufficient when properly pled and supported by the facts alleged. When a complaint contains multiple claims, then the affirmative defenses must be viewed in light of all the claims and their required elements. Defenses sufficient to obviate a single element of a single claim are sufficient and must not be stricken.

### III.   ANTITRUST VIOLATIONS AS A TRADEMARK DEFENSE ARE SUFFICIENTLY SUPPORTED WITH PLED FACTS

*A.    Defendants' Antitrust Defense is Sufficiently Supported with Factual Allegations*

Violations of antitrust laws are a statutory trademark infringement defense pursuant to 15 U.S.C. § 1115 (b) (7). Defendants have identified this defense and associate it with the appropriate code section (Answer, paragraph 91). Defendants identify sufficient facts in support of this defense. Microsoft has engaged in price discrimination to the detriment of L&Y. Microsoft has sold its desktop software products to Dell Computers and others at prices below the price at which L&Y is permitted to purchase the same product. The difference in price is not justified by manufacturing and/or distribution costs. Microsoft has cited authority from other Federal Circuits that require a nexus between the antitrust violations and the trademark involved. However, it is unclear whether the Fourth Circuit has adopted similar restrictions. (*See* discussion in Section VI, *infra*, the Fourth Circuit had adopted a broad range of conduct constituting copyright misuse and does not impose a nexus requirement.)

Defendants in this case have also provided facts indicating that Microsoft has filed this and other "sham" litigation in an effort to maintain its monopoly power in the new desktop software product market. Notwithstanding the fact that Microsoft abandoned Office Pro 2003, it seeks statutory damages for alleged infringement from used software resellers like L&Y. Microsoft's actions are not for the lawful purpose of protecting its intellectual property rights, but to remove and secret Office 2003 from the public to give it an unwarranted advantage in sales of new Office 2007. The defense of antitrust is proper and survives the *Noerr-Pennington* doctrine for the reasons discussed in Section VII, *infra*.

> B.     An Antitrust Defense Need Not be Pled with the Same Specificity as an Antitrust Claim

Microsoft cites numerous cases regarding the heightened specificity with which an antitrust claim must be pled. This is not the same for an antitrust defense. The standards under Federal Rule 12(b)(6) are different than those of 12(f). Rule 12(f) only permits a defense to be struck if it cannot succeed under any circumstances. Microsoft has provided no authority that antitrust defenses are held to the same pleading standards as antitrust claims. Finally, even assuming *arguendo*, that Microsoft requires additional clarification of this defense, it would be appropriate for the Court to permit Defendants to amend and/or replead the defense pursuant to Federal Rule of Civil Procedure 15.

> IV.     EQUITABLE DEFENSE OF TRADEMARK MISUSE IS SUFFICIENTLY PLED AND SUPPORTED WITH PLED FACTS

Microsoft concedes that trademark misuse is a proper affirmative defense to trademark infringement. Microsoft asserts that Defendants have not adequately pled trademark misuse because the defense lacks alleged facts showing a nexus to the claims against which the defense is being asserted. Microsoft misinterprets Defendants' trademark misuse defense.

Defendants raise trademark misuse as a defense to *statutory* damage claims in Microsoft's registered trademarks. Defendants aver that Microsoft has no actual trademark

damages because the alleged counterfeit goods were of an abandoned product and the alleged counterfeits did not tarnish or dilute customer perception of the quality of Microsoft products. As a result, Microsoft trademark damages are limited to statutory damages and claims to either actual or common law trademark damages are baseless.

Applying trademark misuse as a defense to statutory damages, it is sufficiently supported with alleged and pled facts.  Microsoft registration 2,999,281 was obtained with fraud upon the U.S. Patent and trademark office.  Registration 1,256,083 is limited to publications and no counterfeit publications exist in this litigation.  Registration 1,872,264 requires the software to be sold with a manual but the alleged counterfeits did not have a manual.  Registration 1,872, 264 is a generic term and has been adjudged not enforceable as a trademark *in Microsoft Corp. v. Lindows, Inc*.  Registration 2,744,843 may be attacked for claiming non-existent uses. Registration 1,475,975 is limited to software on magnetic disks while the alleged counterfeits were on optical media.  Registration 1,741,086 also requires the software to be sold with a manual.  Registration 2,188,125 requires the software to have enhanced capabilities and can be attacked for lack of notice to the public.  (Defendants' Answer, paragraph 10).

Asserting statutory trademark infringement to but a single defective or inapplicable trademark registration is trademark misuse.  Here Defendants have identified defects or inapplicability to not only one, but virtually all of Microsoft's trademark registrations.  As a result, sufficient facts and nexus to Microsoft are contained in Defendants answer to support their Fifth Affirmative Defense.

Microsoft can avoid this result by striking its claim for statutory trademark damages.  If Microsoft limits its trademark claims to actual or common law trademark damages then its argument asserting a lack of nexus may have relevance.  However, since Microsoft is seeking statutory damages, Defendants have pled the requisite nexus between the defective trademark registrations and this litigation.  Finally, even assuming *arguendo*, that Microsoft requires

additional clarification of this defense, it would be appropriate for the Court to permit

Defendants to amend and/or replead the defense pursuant to Federal Rule of Civil Procedure 15.

## V.   EQUITABLE DEFENSE OF UNCLEAN HANDS AS A TRADEMARK DEFENSE IS SUFFICIENTLY PLED AND SUPPORTED WITH PLED FACTS

Defendants plead with specific facts that Microsoft enters this litigation with unclean

hands.  Microsoft encourages and condones the subterfuge and deception its employees use in

seeking potential sources of counterfeit software.  Microsoft has no legitimate purpose in

bringing litigation when the subject of the litigation is limited to used software products that

Microsoft has expressly abandoned.  Microsoft misleads the public when it controls an activation

process that proclaims software as genuine and then brings suit claiming the same software is

counterfeit.  Microsoft's price discrimination against small computer stores violates antitrust

laws and harms the public by supporting monopoly pricing.  These are but some of the factual

allegations Defendants have included in their answer.

For purposes of its motion to strike and taking the factual allegations as true, Microsoft's

alleged misconduct rises to the level of unclean hands and provides sufficient basis for the

trademark unclean hands defense of 15 U.S.C. § 1115 (b) (9).  Defendants' Ninth Affirmative

Defense is therefore legally sufficient.

## VI.   COPYRIGHT MISUSE DEFENSE ORIGIN AND REQUIREMENTS

### A.   *Misuse Applies if the Copyright is Being Used in a Manner Violative of Public Policy*

As stated above, the Fourth Circuit pioneered the expanded defense of copyright misuse

in the case of *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970 (C.A.4 (N.C.), 1990).  The

*Lasercomb* Court noted: "A successful defense of misuse of copyright bars a culpable plaintiff

from prevailing on an action for infringement of the misused copyright." (*Lasercomb*, 911 F.2d

at 972).  After *Lasercomb*, other Federal districts adopted the copyright misuse defense: Ninth

Circuit, *See, Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir.1997); Third

Circuit, *See, Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191 (3d Cir. 2003);

Seventh Circuit, *See, Assessment Techs. Of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640 (7th Cir.

2003); and Eighth Circuit, *See, International Motor Contest Assn'n., Inc. v. Staley*, 434

F.Supp.2d 650 (N.D. Iowa, 2006).

Copyright misuse does not invalidate a copyright, but precludes the copyright holder

from exercising enforcement during the period of misuse. *Practice Mgmt. Info. Corp. v. Am.

Med. Ass'n*, 121 F.3d 516 at 520 (9th Cir.1997). The copyright holder may bring suit to enforce

its rights against infringers once it ceases the misuse. *Lasercomb*, 911 F.2d at 979, n. 22. The

theory behind copyright misuse follows from patent misuse as identified in *Morton Salt Co. v.

G.S. Suppiger*, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942).

In *Morton Salt*, the United States Supreme Court held that, as a court of equity, it would

not aid Morton Salt Company in protecting its patent when Morton was using the patent in a

manner contrary to public policy. The public policy considerations behind the expanded defense

of copyright misuse were further explained in *Lasercomb*:

> The philosophy behind copyright, …is that the public benefits from the
> efforts of authors to introduce new ideas and knowledge into the public
> domain. To encourage such efforts, society grants authors exclusive rights
> in their works for a limited time.
> *Lasercomb,* 911 F.2d at 975.
>                                       ***
> Both patent law and copyright law seek to increase the store of human
> knowledge and arts by rewarding inventors and authors with the exclusive
> rights to their works for a limited time.
> *Lasercomb,* 911 F.2d at 976.

Misuse occurs whenever a "copyright is being used in a manner violative of the public

policy embodied in the grant of copyright." *Lasercomb,* 911 at 978. In *Lasercomb,* the misuse

was Lasercomb's "attempt to use its copyright … to control competition in an area outside the

copyright." *Lasercomb,* 911 F.2d at 979. The Fourth Circuit ruled that antitrust violations

would be one type of conduct, but not the only conduct constituting copyright misuse:

>So while it is true that the attempted use of a copyright to violate antitrust
>law probably would give rise to a misuse of copyright defense, the converse
>is not necessarily true--a misuse need not be a violation of antitrust law in
>order to comprise an equitable defense to an infringement action.  The
>question is not whether the copyright is being used in a manner violative of
>antitrust law (such as whether the licensing agreement is "reasonable"), but
>whether the copyright is being used in a manner violative of the public
>policy embodied in the grant of a copyright.
>*Lasercomb,* 911 F.2d at 978.

B.      *The Lasercomb Decision is Binding Authority*

Although *Lasercomb* remains binding authority in the Fourth Circuit, Microsoft relies

heavily upon the case of *Microsoft vs. Computer Support Services of Carolina, Inc.,* 123 F.

Supp.2d 945 (W.D.N.C. 2000) ("*Computer Support Services*").  *Computer Support Services*

ended in a stipulated agreement in which Computer Support Services agreed not to commit

future acts of infringement (*i.e.*, no monetary damages).  The magistrate judge's opinion was

limited to preliminary motions.  The ruling was never appealed, nor considered by the district

court judge or the Fourth Circuit Court of Appeals.  As such, the opinion is not controlling

authority in any jurisdiction in any Federal Court.  It is *Lasercomb*, not *Computer Support*

*Services* that is controlling authority in this Court.

Even if *Computer Support Services* is to be considered, the decision must be viewed

under the particular facts of that case.  In *Computer Support Services*, the defendant limited its

copyright misuse claim to antitrust law violations as follows:

>19. Microsoft has misused its copyrights in Windows 95 and Microsoft Office
>Pro 97 as described above including carrying out, and attempts to carry out
>violations of the antitrust laws.  Microsoft is attempting to use its copyright in a
>manner adverse to public policy and to control competition in an area outside of
>its copyright. (*See Computer Support Services*, Answer, Affirmative Defenses
>and Counterclaims of Computer Support Services of Carolina, Inc., Dkt _,
>paragraph 19)

Other forms of copyright misuse were not before the magistrate judge and were therefore not

considered.  Unlike the facts in *Computer Support Services*, the Defendants in this case have

enumerated other bases for misuse, such as abandonment of the copyrighted product; secreting of

the product and unreasonably restricting public access to original works.  This misconduct is in addition to Microsoft's anticompetitive price fixing and attempt to stifle the used software marketplace for the improper purpose of maintaining its monopoly power in the new desktop software product market.

Similarly, Microsoft has overstated the applicability of the ruling in *Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680 (C.A.4 (Md.), 1992).  The defendant in *Service & Training, Inc.* raised copyright misuse based upon an antitrust tying claim.  Prior to ruling on the misuse claim the court in *Service & Training, Inc.* found no improper tying as follows: "[o]ur affirmance of summary judgment on appellants' tying claim in favor of Data General disposes of the copyright misuse defense." (*Service & Training Inc.*, 963 F.2d at 690).  Having a copyright misuse defense based upon antitrust theories dismissed at summary judgment does not apply to the present case.  Unlike the defendant in *Service & Training, Inc.*, the Defendants in this case have provided supporting facts and alleged alternate theories of misuse.

The *Service & Training, Inc.* court acknowledged that copyright misuse is present "if there is an 'attempted use of a copyright to violate antitrust law' or if 'the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright.'" *Service & Training, Inc.*, 963 F.2d at 690, quoting *Lasercomb*, 911 F.2d at 978.  Noteworthy is the Court's use of the broad language, "violative of the public policy."  What may be taken from both *Lasercomb* and *Service & Training, Inc.* is that copyright misuse in the Fourth Circuit is not limited to antitrust violations alone (*i.e.*, facts of *Lasercomb*), or to anti-competitive practices alone (*i.e.*, facts of *Service & Training, Inc.*).

Similarly, the Ninth Circuit has adopted a liberal standard that is not limited to anti-competition misuse.  That Circuit has identified the issue in copyright misuse as "whether plaintiff's use of his or her copyright violates the public policy embodied in the grant of a copyright, not whether the use is anti-competitive." *See, In re Napster, Inc. Copyright Litigation*,

191 F.Supp2d 1087 at 1103 (N.D. Cal 2002).  Based upon a reading of authority both in the

Fourth and Ninth Circuits, anticompetitive practices and/or antitrust violations are not the only

bases for maintaining a copyright misuse defense.  What appears to underlay the reasoning of

these decisions is whether or not the copyright holder is using its copyright in a way that

contravenes the public policy considerations behind a grant of the copyright itself.

     C.     *Microsoft Misstates Authority for Collateral Limitations on a Misuse Defense*

     Microsoft's assertions of collateral limitations in the application of the copyright misuse

defense contradict the liberal language of *Lasercomb* and *Service & Training, Inc.*  The authority

Microsoft cites in support of such limitations does not relate to the reason cited.  For example,

*People for Ethical Treatment of Animals, Inc. v. Doughney,* 113 F. Supp.2d 915 (E.D. Va. 2000)

("*PETA I*") is a trademark case.  The affirmative defenses were trademark misuse and unclean

hands.  Despite being a trademark case, Microsoft cites *PETA I* for the purposes of limiting

copyright misuse.  Similarly, *Coca-Cola Co. v. Howard Johnson Co.,* 386 F. Supp. 330 (N.D.

Ga. 1974)  is a trademark and unfair competition case.  It does not discuss, nor is it controlling as

to copyright misuse.  *Tveter v. AB Turn-O-Matic,* 633 F.2d 831 (9th Cir. 1980) is a trademark and

patent infringement case.  Microsoft cites *Tveter* as a limitation in copyright misuse.  Finally, and

as stated *supra*, the magistrate opinion of *Computer Support Services* is not binding authority on

this Court.

     D.     *Nexus is Not Required to Prevail on a Misuse Defense*

     Microsoft asserts that a party-based nexus must be present in copyright misuse defenses

(Microsoft memorandum page 6, *"directly and adversely affected Defendant."*)  Both the Third

and Eighth Circuits have rejected any nexus element ("To defend on misuse grounds, the alleged

infringer need not be subject to the purported misuse") *Video Pipeline Inc. v. Buena Vista Home*

*Entertainment, Inc.,* 342 F.3d 191 at 204 (3rd Cir. 2003); "nothing in Eighth Circuit law

forecloses such a defense in a copyright infringement case as a matter of law, where no "nexus is

pleaded." *International Motor Contest Assn'n., Inc. v. Staley*, 434 F.Supp.2d 650 at 669 (N.D. Iowa, 2006)).

In the Ninth Circuit, nexus is an element of copyright misuse when the misuse is based upon anti-competitive conduct.  However, the "nexus" is not private nexus between the parties but rather public nexus between the plaintiff's conduct and its control of the copyrighted item ("There has to be a sufficient nexus between the alleged anti-competitive leveraging and the policy of the copyright laws. ...a party asserting misuse on the basis of an antitrust violation must establish a nexus between ... [the] alleged anti-competitive actions and [the plaintiffs] power over the copyrighted material.") *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 454 F.Supp.2d 966 (C.D. Cal., 2006) *quoting In re Napster, Inc. Copyright Litigation*, 191 F.Supp.2d 1087 (N.D.Cal.2002))

Microsoft's reliance upon *Microsoft Corporation v. Jesse's Computers and Repairs, Inc*, 211 F.R.D. 681 (M.D. Fla. 2002) ("*Jesse's Computers*") is particularly unpersuasive.  After bringing hundreds of infringement suits during the past nine years, Microsoft relies upon *Jesse's Computers* as the basis of a nexus requirement.  The defendants' answer in *Jesse's Computers* (attached hereto as Exhibit A) contained no specifics or facts in support of a copyright misuse defense.  Microsoft's motion to strike the affirmative defense was granted *unopposed* when defendants failed to respond to Microsoft's motion (*See, Jesse's Computers* Order, Dkt. 12, page 1, attached as Exhibit B).  In striking copyright misuse as a defense, the court found that Rule 8(a) had not been satisfied by defendant's pleadings.  The court then went on to emphasize that copyright misuse had not been recognized as a defense in the Eleventh Circuit at the time of the order (*Jesse's Computers* Order, page 6).  An unopposed granting of a motion in a district not recognizing copyright misuse is not controlling in any jurisdiction much less in the district that first adopted the defense of copyright misuse.

VII.   *NOERR-PENNINGTON* DOCTRINE IS LIMITED AND DOES NOT APPLY TO AFFIRMATIVE DEFENSES NOR SHAM LAWSUITS

Microsoft asserts that its anticompetitive conduct in the form of initiating litigation is immune from a misuse defense under the *Noerr-Pennington* doctrine unless the lawsuit is sham litigation (Microsoft Memo in Support of Motion to Strike, pages 7-8).  This assertion fails for two reasons: (1) *Noerr-Pennington* provides immunity from tort claims but does not prevent affirmative defenses and (2) sufficient facts have been plead to infer that this lawsuit is sham litigation.

A.     *Noerr-Pennington Protection Does Not Extend to Affirmative Defenses*

*Noerr-Pennington* applies to affirmative claims, but not defenses.  An analysis of the application of the *Noerr-Pennington* doctrine to copyright misuse is found in *International Motor Contest Ass'n, Inc. v. Staley*, 434 F.Supp.2d 650 at 662-664 (N.D. Iowa, 2006*).  The International Motor* court first states that the *Noerr-Pennington* doctrine provides immunity from tort liability for the act of filing a lawsuit, based on the First Amendment rights to free speech and to petition the court. (*International Motor Contest Ass'n, Inc.*, 434 F.Supp.2d at 662).

*Noerr-Pennington* protects a defendant from liability but not from suit.  However, copyright misuse and unclean hands as affirmative defenses, do not attempt to impose liability upon plaintiff, rather they "raise certain kinds of inequitable conduct by [plaintiff] IMCA as shields to [plaintiff's] IMCA's copyright infringement claims.  Thus these affirmative defenses simply do not run afoul of *Noerr-Pennington* immunity from liability." *International Motor Contest Ass'n, Inc.*, 434 F.Supp.2d at 663.

Further, *Noerr-Pennington* immunity is limited to the filing of a lawsuit or other petitioning of the government.  The *Noerr-Pennington* doctrine does not bar defenses (or even claims) in which the inequitable conduct extends beyond or is different from the filing of a lawsuit or other petitioning of the government.  Other forms of inequitable conduct are not

shielded by *Noerr-Pennington. International Motor*, 434 F.Supp.2d at 663.

      B.     *Microsoft is Indifferent to the Outcome of this Litigation*

According to the authority cited by Microsoft, a lawsuit is a sham if it is a case in which "the plaintiff is indifferent to the outcome of the litigation itself, but has nevertheless sought to impose a collateral harm on the defendant…" *See, Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 at 68, Souter concurring opinion (1993).

Here, Defendants present factual allegations that this lawsuit is sham litigation. Microsoft is indifferent to the outcome of the litigation because it has abandoned Office Pro 2003 as a product. Microsoft is indifferent to preventing infringement of Office Pro 2003 because it no longer manufactures, markets or sells Office Pro 2003. Instead, Microsoft's motivation as plead, is to stifle the resale of used Office Pro 2003. By eliminating Office Pro 2003, users will be forced to adopt the inferior Office 2007. The tactic Microsoft adopts to stifle resale of Office Pro 2003 is to bring sham litigation against small computer businesses that sell used software. The purpose of the litigation is to harm the seller of used software (and ultimately the consumer) and not to prevent infringement of its abandoned product.

### VIII.   COPYRIGHT MISUSE AS A COPYRIGHT DEFENSE IS SUFFICIENTLY PLED AND SUPPORTED WITH PLED FACTS

Unlike *Jesse's Computers,* where defendants provided no facts and a conclusory claim, the Defendants in this case have provided a plethora of facts and numerous averments in support of their copyright misuse defense (*See*, Defendants Answer, paragraphs 70 through 79; Affidavit of John Linton; and Affidavit of Matthew Linton).

The Defendants assert copyright misuse in defense to statutory damages claimed by Microsoft. Microsoft discontinued Office Pro 2003 in 2006 and now seeks to chill the legitimate resale of used copies. Microsoft is not losing sales of Office Pro 2003. Most personal computers in operation are capable of operating Office Pro 2003. This is not true for Office 2007. Office

2007 will not operate on many computers and when it does, it runs slower and has different menus and controls.  For a customer to "upgrade" to Office 2007 he or she must replace or upgrade the computer and go through an extensive retraining process.  As a result of the significant impact to the marketplace, it is a misuse to secret and prevent the public from obtaining copies of Office Pro 2003.  It is a misuse to represent that the Microsoft activation process protects manufacturers from copyright infringement and then bring suit after the Microsoft activation indicates the software is non-infringing.  It is a misuse to attempt to chill the legitimate market for used copies of Office Pro 2003 for the purpose of gaining an unwarranted advantage in the new desktop software market.  It is a misuse for Microsoft to have its representative, Mr. Fuller give assurances and then not be bound by those assurances.

Although "nexus" is not a required element of copyright misuse in the Fourth Circuit, it is present and pled in this litigation.  Microsoft, and not some third party, discontinued and secreted from the public Office Pro 2003.  Microsoft, and not some third party, control the Microsoft activation process.  Mr. Fuller works for Microsoft, and not some third party.  Microsoft, and not some third party, is attempting to chill the resale market for Office Pro 2003 to maintain its monopoly of the new desktop software market.  In short, nexus to Microsoft's conduct is identified in Defendants answer and affirmative defenses.

Defendants have sufficiently noticed Microsoft that its conduct rises to the level of copyright misuse and as copyright misuse is a defense to statutory damages, has been adequately pled and supported by factual allegations.  Therefore Defendants' Fourth Affirmative Defense is sufficient as a matter of law.

IX.    CONCLUSION

Unlike in *Jesse's Computers*, the Defendants in this case have adequately provided notice to Plaintiff of their affirmative defenses and have alleged supporting facts.  As a result, Defendants respectfully request that Plaintiff's motion to strike Defendants Fourth, Fifth, Eighth and Ninth Affirmative Defenses be denied.  Defendants further request, in the alternative, that should the Court grant any relief requested by the Plaintiff, that they be given leave to amend for the purpose of further amplifying the above named defenses.

Respectfully submitted,


_____/s/_____

Jenine Elco Graves, Esq.
Virginia State Bar No. 44877
Co-counsel for Defendants
QUINTO & WILKS, P.C.
3441 Commission Court
Lake Ridge, Virginia 22192
Phone: 703-492-9955
Fax: 703-492-9455
jgraves@quintowilks.com

_____

Timothy W. Graves, Esq.
Virginia State Bar No. 45414
Co-counsel for Defendants
A ATTORNEY LLC
9300 Grant Avenue, Suite 203
Manassas, Virginia 20110
Phone: 703-365-8306
Fax: 703-365-8307
a-atty@verizon.net

## CERTIFICATE OF SERVICE

I hereby certify that on this ___15th___ day of August, 2008, I will electronically file the foregoing Defendants' Memorandum in Opposition to Plaintiff's Motion to Strike Defendants' Fourth, Fifth, Eighth and Ninth Affirmative Defenses with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

> John K. Roche, Esq.
> Counsel for Plaintiff
> PERKINS COIE, LLP
> 607 Fourteenth Street, N.W., Suite 800
> Washington, D.C. 20005
> Phone: 202-434-1627
> Fax: 202-654-9106
> jroche@perkinscoie.com

Respectfully submitted,


_____/s/_____

Jenine Elco Graves, Esq.
Virginia State Bar No. 44877
Co-counsel for Defendants
QUINTO & WILKS, P.C.
3441 Commission Court
Lake Ridge, Virginia 22192
Phone: 703-492-9955
Fax: 703-492-9455
jgraves@quintowilks.com

_____

Timothy W. Graves, Esq.
Virginia State Bar No. 45414
Co-counsel for Defendants
A ATTORNEY LLC
9300 Grant Avenue, Suite 203
Manassas, Virginia 20110
Phone: 703-365-8306
Fax: 703-365-8307
a-atty@verizon.net